Stephanie WILLIAMS a/k/a Stephanie
Scholler and Tim Williams,
Appellants,

v.

William COLTHURST, Yuko Colthurst,
WGW Properties, Inc. d/b/a Century
21 Advantage, Tom Dewitt, Century 21
Real Estate Corporation, and Felix
Kauffman, Appellees.

No. 11–06–00103–CV.

Court of Appeals of Texas,
Eastland.

April 3, 2008.

Christopher T. Massey, J. Bennett White, Tyler, Tyler, TX, for appellant.

David A. McFarland, Craig L. Dowis, Dallas, Ken W. Good, Vance L. Metcalf, Tyler, TX, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

This appeal arises from a landlord-tenant dispute. William and Yuko Colthurst (the landlords) leased their home in Tyler to Tim and Stephanie (Scholler) Williams (the tenants) in a written lease signed on March 6, 2000. The lease provided for a term of two years beginning on May 1, 2000, and ending April 30, 2002. The landlords' home was available for lease for an extended period of time because they were moving to Japan. The landlords designated a real estate firm, Century 21 Advantage, to serve as the property manager for the house during the term of the lease. Tom DeWitt served as the individual that managed the property on behalf of Century 21 Advantage.

In the early part of 2002, the landlords and the tenants began discussing the disposition of the home at the end of the lease. The tenants had expressed an interest in continuing to lease the home. The landlords informed the tenants that they wanted to sell the home when the lease ended in April. The tenants subsequently invoked an extension clause of the lease that permitted them to unilaterally extend the lease for an additional six months.

The tenants' desire to remain in the home for an additional six months changed when Mrs. Williams was sexually assaulted in the home on April 16, 2002. Mr. Williams informed the landlords in an e-mail on April 20, 2002, that the tenants did not want to continue occupying the home.[1] Mr. Williams suggested to the landlords in this e-mail that, unless they listed the house for sale, the tenants would sublease the home for the remaining six months. The landlords and the tenants subsequently exchanged several e-mails over the course of the next month discussing the possibility of the tenants vacating the home prior to the end of the six-month extension period. The tenants ultimately vacated the home at the end of May 2002.

The landlords subsequently filed suit against the tenants on January 8, 2003, asserting claims for unpaid rent and property damage. The tenants responded by filing a counterclaim against the landlords asserting a statutory claim for wrongful withholding of their security deposit and a premises liability claim in connection with the sexual assault. With respect to the premises liability claim, the tenants alleged that the landlords had failed to equip the home with proper security devices required by statute. The tenants additionally asserted a premises liability claim against WGW Properties, Inc. d/b/a Century 21 Advantage, Tom DeWitt, and Century 21 Real Estate Corporation (collectively referred to as the property manager). The landlords joined the assailant who sexually assaulted Mrs. Williams, Felix Kauffman, as a responsible third party with respect to the premises liability claim.

The trial court entered a partial summary judgment in favor of the landlords on the unpaid rent claim. The remaining claims proceeded to trial. At the conclusion of the presentation of evidence, the

---

1. Mr. Williams did not inform the landlords in his April 20, 2002 e-mail that Mrs. Williams was sexually assaulted inside the home. Instead, Mr. Williams based the tenants' desire to vacate the house on "the sudden death of [Mr. Williams's] father and also a painful event for [Mrs. Williams]."

trial court granted a directed verdict in favor of the landlords and the property manager on the premises liability claim. Issues concerning the property damage and security deposit claims and attorney's fees were submitted to the jury. The jury returned a verdict for the landlords on all submitted claims. The trial court entered a judgment in favor of the landlords and property manager in accordance with the partial summary judgment, the directed verdict, and the jury's findings.

### Issues

The tenants raise seven issues on appeal. The first issue challenges the partial summary judgment entered in favor of the landlords on their unpaid rent claim. In their second and third issues, the tenants contend that the trial court erred in failing to enter judgment in their favor on their statutory security deposit claim as a matter of law. The tenants' fourth issue globally attacks the trial court's judgment. The tenants challenge the directed verdict denying their premises liability claim in their fifth issue. The tenants' sixth and seventh issues relate to their attempt to set aside the award of the landlords' attorney's fees. We affirm.

### Unpaid Rent

■ The trial court entered a partial summary judgment in favor of the landlords in the amount of $8,850 on their unpaid rent claim. This sum represented monthly rent of $1,450 and a monthly late fee of $25 for the six-month extension period of May 2002 to October 2002.[2] We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). The landlords filed a traditional motion for summary judgment with respect to their unpaid rent claim. In a summary judgment motion brought under Tex.R. Civ. P. 166a(c), the moving party has the burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Browning v. Prostok*, 165 S.W.3d 336 (Tex. 2005); *Knott*, 128 S.W.3d at 215–16. We review the evidence presented by the summary judgment motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006); *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex.2007); *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex.2006); *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex.2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005).

The landlords based their claim for unpaid rent on the six-month lease extension that the tenants exercised in February 2002. The tenants responded to the motion by asserting that the landlords agreed to release them from the extension in the e-mails exchanged between the parties in April and May 2002. The tenants submitted a portion of the e-mails as summary judgment evidence to support their contention. The landlords replied to the tenants' contention by submitting all of the e-mails between the parties to support their assertion that the parties did not reach a valid agreement to excuse the tenants from the six-month extension.

---

**2.** The partial summary judgment did not address the landlords' recovery of attorney's fees on their unpaid rent claim.

■ A modification of a contract must satisfy the elements of a contract: a meeting of the minds supported by consideration. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex.1986). Whether a contract is modified depends on the parties' intentions and is a question of fact. *Id.* at 228–29. The burden of proving modification rests on the party asserting the modification. *Id.* at 229. The affirmative defense of accord and satisfaction is a type of contractual modification that rests upon a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of a lesser payment tendered and accepted. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969). Because a valid accord and satisfaction depends upon an agreement, it "only occurs when the parties mutually assent to it," and their intention is a controlling element. *McCarty v. Humphrey*, 261 S.W. 1015, 1016 (Tex. Comm'n App. 1924, judgm't adopted).

A review of all of the e-mails exchanged between the parties during the relevant period conclusively establishes that the parties did not mutually assent to the release of the tenants' obligations under the six-month extension. The tenants informed the landlords at the outset of the e-mails that they would be vacating the house in the near future. The initial communications focused on a discussion of whether the tenants would be subleasing the property to another tenant during the six-month extension period or if the landlords would be putting the home up for immediate sale. The parties discussed the possibility of the tenants vacating the premises at the end of May 2002 and being released from the remainder of the six-month extension period. However, a dispute existed with respect to the payment of rent for the month of May. The tenants took the position that the security deposit that they made at the beginning of the lease term included the last month's rent. Based upon this contention, the tenants asserted that they had already paid May's rent since it constituted the last month that they would be occupying the home. The landlords disagreed with this contention and demanded the payment of rent for May.

The landlords sent the last communication in the exchange of e-mails between the parties on May 20, 2002. In this e-mail, the landlords advised the tenants as follows: "You are NOT released from your extension until you recieve [sic] written notice of such. . . . You ARE in breach of your lease, and you ARE overdue on your rent for May 2002." This e-mail conclusively establishes that the parties did not mutually agree for the tenants to be released from the six-month extension period. Accordingly, the trial court did not err in granting partial summary judgment on the landlords' claim for unpaid rent. The tenants' first issue is overruled.

*Waived Issues*

■ The tenants second and third issues concern their statutory security deposit claim. *See* TEX. PROP.CODE ANN. § 92.109 (Vernon 2007). They assert in their second issue that the trial court erred in denying their motion for partial summary judgment on their statutory security deposit claim. We note, however, that the tenants' statutory security deposit claim was subsequently tried to the jury. The general rule is that a denial of a summary judgment cannot be reviewed on appeal. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996). Further, where a motion for summary judgment is denied by the trial court and the case is tried on its merits, the order denying the summary judgment cannot be reviewed on appeal. *See Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex.

1966).[3] Consequently, the trial court's denial of the tenants' motion for partial summary judgment is not reviewable on appeal. The tenants' second issue is overruled.

In their third issue, the tenants assert that the trial court erred in denying their motion for directed verdict. The tenants moved for a directed verdict after the landlords rested their case-in-chief on the landlords' property damage claim. After the trial court denied the motion for directed verdict, the tenants proceeded with presenting evidence during their case-in-chief and did not reurge their motion for directed verdict at the close of the evidence. Therefore, the tenants failed to preserve their complaint for appellate review. *See 1986 Dodge 150 Pickup v. State,* 129 S.W.3d 180, 183 (Tex.App.-Texarkana 2004, no pet.); *Horton v. Horton,* 965 S.W.2d 78, 86 (Tex.App.-Fort Worth 1998, no pet.); *Cliffs Drilling Co. v. Burrows,* 930 S.W.2d 709, 712 (Tex.App.-Houston [1st Dist.] 1996, no writ). The tenants' third issue is overruled.

### Trial Court's Judgment

In their fourth issue, the tenants globally assert that the judgment entered by the trial court is "inconsistent with the evidence presented at trial and is contrary to applicable law." The tenants support this contention by making several complaints about the judgment. We address these complaints separately.

The tenants first contend that the trial court should have disregarded the jury's "no" answers to Question Nos. 5 and 7 of the court's charge. Question No. 5 asked the jury if the landlords "wrongfully" withheld any portion of the security deposit. Question No. 7 asked the jury to determine if the landlords "wrongfully" failed to timely provide a written description and itemized list of damages after the tenants surrendered possession of the premises.

Section 92.109 establishes two causes of action that permit a tenant to seek a recovery of his security deposit from his landlord. *See Pulley v. Milberger,* 198 S.W.3d 418, 427–28 (Tex.App.-Dallas 2006, pet. denied). The first cause of action involves a landlord's bad faith retention of the security deposit and is established in Section 92.109(a). To prevail under this cause of action, the tenant must prove the landlord (1) acted in bad faith and (2) retained the security deposit in violation of the statute. When a landlord is found liable under Section 92.109(a), the tenant may recover from the landlord (1) an amount equal to the sum of $100, (2) three times the portion of the security deposit wrongfully withheld, and (3) the tenant's reasonable attorney's fees in a suit to recover the security deposit.

The second cause of action involves a landlord's bad faith failure to account for the security deposit and is established in Section 92.109(b). To prevail under this cause of action, the tenant must prove the landlord (1) acted in bad faith and (2) failed to provide the tenant with: (a) a written description of the damages in violation of the statute and (b) an itemized list of the deductions in violation of the statute. A landlord who is found liable under Section 92.109(b): (1) forfeits the right to withhold any portion of the security deposit, (2) forfeits the right to sue the tenant for damages to the premises, and (3) is liable for the tenant's reasonable attor-

---

**3.** The party's remedy is to assign error to the trial court's judgment ultimately rendered following trial on the merits. *See Turner v.* *County of Marion,* 549 S.W.2d 254, 255 (Tex. Civ.App.-Texarkana 1977, writ dism'd).

ney's fees in a suit to recover the security deposit.

Question No. 5 contained most of the elements of a cause of action under Section 92.109(a), and Question No. 7 contained most of the elements of a cause of action under Section 92.109(b). Particularly, Question Nos. 5 and 7 omitted the element of bad faith. The court's charge submitted the element of bad faith to the jury in Question No. 8 in the following manner:

Did the [landlords] act in bad faith?

(a) In failing to return the [tenants] security deposit on or before the 30th day after they surrendered possession of the premises?

Answer "Yes" or "No."

Answer: _No_

(b) In failing to provide a written description and itemization of deductions to the [tenants] on or before the 30th day after they surrendered possession of the premises.

Answer "Yes" or "No."

Answer: _No_

Question No. 8 was not conditioned upon affirmative findings to Question Nos. 5 or 7. Thus, the jury considered the issue of bad faith on both causes of action set out in Section 92.109 even though the jury had previously determined that the remaining elements of the two statutory causes of action did not exist.

By answering "no" to both parts of Question No. 8, the jury found that the landlords did not act in bad faith in either failing to return a portion of the security deposit or providing an accounting of property damages. This unchallenged finding [4] precludes our consideration of the tenants'

evidentiary challenges to Question Nos. 5 and 7. Even if the jury had answered Question Nos. 5 and 7 in favor of the tenants or if the trial court had disregarded the jury's "no" answers to these questions, the jury's "no" answers to Question No. 8 prevents the tenants from making a recovery on either of their statutory security deposit causes of action. Thus, the jury's determination that the landlords did not act in bad faith renders the jury's answers to Question Nos. 5 and 7 immaterial. A question is immaterial when it is rendered immaterial by other findings. *See Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994). Accordingly, we do not consider the tenants' evidentiary challenges to Question Nos. 5 and 7 because they are not necessary to the final disposition of the appeal. *See* TEX. R.APP. P. 47.1.

■ Moreover, there is evidence that supports the jury's answers to Question Nos. 5, 7, and 8. The landlords testified that they incurred expenses of $5,198.03 to repair the property after the tenants vacated the premises. This amount exceeded the amount of the security deposit.[5] Additionally, the trial court had previously determined that the tenants owed unpaid rent and late fees of $8,850. The lease provided that the landlords could deduct unpaid or accelerated rent and late fees from the security deposit. Furthermore, TEX. PROP.CODE ANN. § 92.107(a) (Vernon 2007) provides that the landlord is not obligated to return a tenant's security deposit or give the tenant a written description of the damages and an itemized list of the deductions until the tenant gives the

---

4. The tenants have not challenged the sufficiency of the evidence supporting the jury's determination that the landlords did not act in bad faith.

5. As noted previously, the parties disputed the amount of the security deposit made by the tenants. Based upon the positions taken by the parties, the tenants posted a security deposit of either $3,900, $2,450, or $1,000.

landlord a written statement of the tenant's forwarding address for the purpose of returning the security deposit. *See Pulley*, 198 S.W.3d at 427–28. DeWitt testified that the tenants did not provide a forwarding address for this purpose. With respect to the issue of the landlords' bad faith, there is evidence that the tenants ended communications with the landlords by canceling their e-mail account prior to vacating the premises. The tenants also did not claim certified mail sent to them by the landlords' attorney. The landlords testified that they filed the suit in order to "get somebody to talk" to them because they had not had any communication with the tenants after the tenants vacated the property.

 The tenants next argue that the trial court's judgment should not have included an award of attorney's fees to the landlords for defending the tenants' statutory security deposit claims. The tenants contend that Section 92.109 does not provide for the recovery of a landlord's costs for defending a security deposit claim. Attorney's fees may be recovered from an opposing party only when permitted by statute or by contract. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999). The lease executed by the parties contains an attorney's fees provision that reads as follows:

> **33. ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this Lease is entitled to recover prejudgment interest, attorney's fees, and all other costs of litigation from the nonprevailing party.

Pursuant to this provision, the landlords are entitled to recover their attorney's fees incurred in successfully defending the security deposit claims because the claims are "related to the transaction" described in the lease.

 The tenants next contend that the trial court's judgment should not have awarded the landlords prejudgment interest on their recovery of attorney's fees in the amount of $23,000. Prejudgment interest is generally not allowed on an award of attorney's fees. *C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 325 (Tex.1994). However, in *A.V.I., Inc. v. Heathington*, 842 S.W.2d 712, 717 (Tex. App.-Amarillo 1992, writ denied), the Amarillo Court of Appeals concluded that prejudgment interest on attorney's fees paid prior to the entry of judgment is recoverable. The landlords filed an affidavit in the trial court showing that they had paid attorney's fees in excess of $23,000 prior to the entry of judgment. Accordingly, the trial court did not err in awarding the landlords prejudgment interest on their recovery of attorney's fees.

 Next, the tenants attack the award of court costs in the trial court's judgment. They contend that the award of a specific amount of court costs is improper. They additionally assert that the award of court costs is not supported by evidence.[6] The tenants' evidentiary challenge is misplaced because court costs are not an issue for the finder of fact. *See Am. Commercial Colls., Inc. v. Davis*, 821 S.W.2d 450, 455 (Tex.App.-Eastland 1991, writ denied) (The right to costs is based entirely on statutes or procedural rules; the trial court should determine and award costs from the record.).

 The court's role is to adjudicate which party or parties are to bear the

---

**6.** We note that the tenants have not cited any authority in support of their contentions regarding the judgment's award of costs.

costs of court, not to determine the correctness of specific items. *See Reaugh v. McCollum Exploration Co.,* 140 Tex. 322, 167 S.W.2d 727, 728 (1943); *Pitts v. Dallas County Bail Bond Bd.,* 23 S.W.3d 407, 417 (Tex.App.-Amarillo 2000, pet. denied). Thus, the judgment should not state the amount taxed as costs but only that costs are awarded against a certain party. *See Pitts,* 23 S.W.3d at 417. However, the tenants do not challenge the accuracy of the amount of court costs awarded in the final judgment. In the absence of a complaint about the amount of court costs taxed against them, we will not disturb the award of court costs in the judgment. However, if the tenants wish to complain about the taxation of any specific costs, the proper remedy is to file a motion to re-tax costs in the trial court. *See Operation Rescue–Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.,* 937 S.W.2d 60, 87 (Tex.App.-Houston [14th Dist.] 1996), *aff'd as modified,* 975 S.W.2d 546, 570 (Tex.1998).

■ The tenants' next complaint focuses on the award of the landlords' attorney's fees for prosecuting their property damage claim. The jury awarded the landlords $1,858.63 in property damages. The tenants assert that the landlords could not have been prevailing parties under the lease's attorney's fee provision because the tenants' security deposit of either $2,450 or $3,900 exceeded the amount of property damages awarded by the jury. This contention is not consistent with the manner that the parties' presented the property damage question to the jury during closing arguments. Specifically, both parties argued that the jury's answer to the property damage question should be the amount of damages that the jury determined were in excess of the security deposit made by the tenants. Accordingly, the landlords were prevailing parties on their property damage claim because the jury made an award for property damages in excess of the security deposit made by the tenants.

■ Finally, the tenants argue that they should have been credited with either a payment of $2,450 or $3,900 toward the judgment's award of prejudgment interest. The tenants base this argument on the same contention discussed in the preceding paragraph. This argument is misplaced because the award of prejudgment interest is based on amounts ordered to be paid by the tenants in excess of their security deposit. The tenants' fourth issue is overruled.

### Premises Liability

■ In their fifth issue, the tenants challenge the trial court's directed verdict denying their premises liability claim. In reviewing the grant of a directed verdict, an appellate court follows the standards for assessing the legal sufficiency of the evidence. *City of Keller,* 168 S.W.3d at 809–28. We must decide whether there is any evidence of probative value to raise an issue of material fact on the question presented. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). We must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller,* 168 S.W.3d at 827.

As noted previously, Mrs. Williams was sexually assaulted inside the home on April 16, 2002. Her assailant, Felix Kauffman, testified at trial. Kauffman followed her home one day after observing her at a fitness club in Tyler. He returned to the home the next day and entered it when no one was present. Kauffman testified that he entered the home through the unlocked front door. He hid in the house while waiting for Mrs. Williams to return. After Mrs. Williams entered the home, he tackled her inside of the master bedroom.

Kauffman immediately blindfolded Mrs. Williams, and then he sexually assaulted her. The sexual assault ended when Mr. Williams returned home. Kauffman fled the home when Mr. Williams discovered the assault taking place.

The bedroom where the assault occurred had an exterior door that opened into the backyard. The tenants' premises liability claim focuses on the type of lock on the interior side of this door. The lock required a key in order for the door to be locked or unlocked from the inside. The tenants kept the key to this lock at another location inside the bedroom. The tenants contend that this type of lock violated the requirements of TEX. PROP.CODE ANN. § 92.153 (Vernon 2007) because it was not a "keyless bolting device."

Mrs. Williams did not attempt to escape from Kauffman during the attack. She testified that she considered trying to escape during the attack but that she knew there was no way she could have retrieved the key to the door and then used it to open the door. The tenants contend that the type of lock on the exterior bedroom door contributed to her decision to submit to the assault. They assert that Mrs. Williams would have had a better chance of escaping from Kauffman if the exterior bedroom door had been equipped with a keyless bolting device as required by the statute.

▇▇▇ There is a significant body of law in Texas dealing with a landlord's liability for an attack on a tenant by a third party occurring on the leased premises. As a rule, a person has no legal duty to protect another from the criminal acts of a third person. *Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 756 (Tex.1998). However, Texas courts have recognized an exception to the general rule for a landlord that retains control over the security and safety of the premises. In this situation, the landlord has a duty to use ordinary care to protect tenants from the criminal acts of third parties if the landlord knows or has reason to know of an unreasonable and foreseeable risk of harm to the tenant. *Id.*

In the typical landlord liability case, the tenant asserts that the landlord's negligence caused him or her to be the victim of the criminal act of a third person. The issue of foreseeability is a major element in these cases. Only the general danger, not the sequence of events that produced the harm, must be foreseeable. *Id.* The general danger in the typical case is the risk of injury from the criminal activity of third parties. *Id.* There must be evidence of specific previous crimes on or near the premises in order to establish foreseeability. *Id.* In determining whether the criminal conduct was foreseeable, the court must consider whether any criminal conduct previously occurred on or near the property, how recently the criminal conduct occurred, how often it occurred, how similar the conduct was to the conduct on the property, and what publicity was given to the occurrences to indicate whether the landlord knew or should have known about them. *Id.* at 757.

The fact pattern in this appeal differs significantly from the ordinary claim because the tenants are not asserting that the landlords and the property manager failed to prevent the assault from ever occurring. Instead, the tenants are contending that the acts and omissions of the landlords and the property manager hampered Mrs. Williams's opportunity to escape from the criminal acts of a third party. The tenants' claim is, therefore, more complex than the typical landlord liability case because it requires us to consider an additional element to determine the landlords' potential liability. This additional element is the matter of evaluating

Mrs. Williams's opportunity to escape from her attacker.

To prevail on their premises liability claim, the tenants must establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005); *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). We direct our analysis to the element of proximate cause. Proximate cause has two components: cause in fact and foreseeability. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex. 1992). These elements cannot be established by mere conjecture, guess, or speculation. *Doe,* 907 S.W.2d at 477. The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred. *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex.2003). If the defendant's negligence merely furnished a condition that made the injuries possible, there can be no cause in fact. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 799 (Tex.2004). In other words, the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm. *Id.*

Our application of the foregoing standards establishes that there is no evidence that the absence of a keyless bolting device on the exterior bedroom door proximately caused the tenants' injuries. Specifically, there is no evidence beyond mere conjecture, guess, or speculation that a different type of lock on the bedroom door would have allowed Mrs. Williams to escape from Kauffman's sexual assault. The possibility of escaping a physical assault brought about by a criminal perpetrator is an inherently speculative matter. Furthermore, the task of predicting the likelihood of escaping is particularly speculative when the victim does not attempt to escape his or her attacker.

The tenants contend that the type of door lock denied Mrs. Williams the "opportunity to [try] to escape" by contributing to her decision to submit to the assault. Mrs. Williams testified as follows in this regard:

Q. What do you remember, if anything, occurring to you that caused you not to resist his attack?

A. What do I remember?

Q. What do you remember occurring to you at the—at the time you were being attacked that caused you not to resist and try to escape?

A. Well, number one, I wasn't positive if he had a weapon. And number two, I—for the same reason we talked about. I didn't have anywhere to go. There was nowhere to get if I wanted to.

Q. What is your opinion of your—the likelihood that you would have looked for an opportunity or pursued an opportunity to escape had you had an idea that you could have gotten out that door?

A. I—I—I would have, hopefully, taken it. I mean, that's to me—I don't know that answer. I mean, I do know that I knew the door was locked and I couldn't get out that door, because there was no key. But I don't know from then if—if it hadn't been like that, I don't know what—

Q. Can you—can you tell us whether or not you can honestly say that realizing that the—realizing the type of lock that was there—

A. Uh-huh (Affirmative)

Q. —contributed to you submitting to the assault that you suffered?

A. What is your—say it again. I—I want to make sure I answer—

Q. Can you tell us whether or not the type of lock that was on that door—

A. Yes.

Q. —contributed to you submitting to the assault that you suffered?

A. Yes.

As reflected by the foregoing testimony, Mrs. Williams testified that she does not know if she would have tried to escape from Kauffman if the exterior bedroom door had been equipped with a keyless bolting device. Accordingly, there is no evidence beyond mere speculation that Mrs. Williams would have been able to escape with a different type of door lock. The tenants' fifth issue is overruled.

### Attorney's Fees and Sanctions

The tenants' sixth and seventh issues pertain to the landlords' recovery of attorney's fees on their unpaid rent claim. The jury awarded the landlords attorney's fees of $10,000 on the rent claim. The landlords' trial counsel testified that they had incurred attorney's fees of $15,000 on the rent claim. On cross-examination, the landlords' trial counsel attributed $5,000 of the $15,000 amount to work performed through the point of obtaining the partial summary judgment.

Near the end of the trial, the tenants informed the trial court during a bench conference that they wanted to call one of the landlords' other attorneys as a witness. The tenants sought to challenge the previous testimony of the landlords' trial counsel with the testimony of his associate. Specifically, the tenants wanted to introduce an affidavit prepared by the associate regarding the landlords' attorney's fees that the landlords attached to their motion for partial summary judgment. The trial court did not permit the tenants to call the associate attorney as a witness. The trial court also did not permit the tenants to offer the associate's affidavit as an exhibit.[7]

The tenants alleged in their motion for new trial that the testimony of the landlords' trial counsel constituted intrinsic fraud on the basis that it was inconsistent with the matters set out in the associate's affidavit. In response to the motion for new trial, the landlords filed a motion for sanctions against the tenants' trial counsel, J. Bennett White, asserting that he lacked a factual basis for the intrinsic fraud allegation. The trial court denied the motion for new trial after conducting a hearing on the motion. The trial court also granted the landlords' motion for sanctions by ordering White to pay the landlords sanctions in the amount of $250.

In their sixth issue, the tenants assert that the trial court erred in denying the motion for new trial on the basis of intrinsic fraud. We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex.1994). We begin our analysis by noting that no reporter's record from the hearing on the motion for new trial has been filed in this appeal. In the absence of a record from the hearing, we are unable to determine if the trial court abused its discretion in denying the motion for new trial.

Moreover, the Tyler Court of Appeals has previously addressed the tenants' allegation of intrinsic fraud in a mandamus proceeding in *In re Williams*, No. 12–06–00361–CV, 2007 WL 1241517 (Tex.App.-Tyler April 30, 2007, orig. proceeding) (mem.op.). The mandamus request arose from the tenants' efforts to obtain the billing records of the landlords' trial coun-

---

**7.** The arguments presented to the trial court indicated that the tenants did not list the associate as a witness and did not list the associate's affidavit as an exhibit.

sel by a subpoena duces tecum prior to their hearing on their motion for new trial. 2007 WL 1241517, at *1. The trial court quashed the tenants' subpoena duces tecum. *Id.* The tenants sought an order from the Tyler Court of Appeals compelling the trial court's enforcement of the subpoena so that the billing records could be included in the record in this appeal.[8] *Id.* In reaching its decision to deny the tenants' mandamus request, the Tyler Court of Appeals noted that the tenants "presented no evidence of **intrinsic fraud** at the hearing on their **motion** for **new trial**." *Id.* In the absence of a record from the hearing, we are reluctant to disagree with the determination by the Tyler Court of Appeals that the tenants presented no evidence of intrinsic fraud. The trial court did not abuse its discretion in denying the motion for new trial if the tenants did not present any evidence of intrinsic fraud. The tenants' sixth issue is overruled.

The tenants allege in their seventh issue that the trial court erred in ordering White to pay sanctions. The landlords sought sanctions against White under Tex.R. Civ. P. 13 on the basis that White did not have a good faith basis to allege that the landlords' trial counsel offered false testimony on the issue of attorney's fees. The landlords sought sanctions in the amount of $500, which they alleged constituted their attorney's fees for filing the motion for sanctions. After a hearing, the trial court granted the motion by ordering White to pay sanctions of $250. We review the imposition of Rule 13 sanctions under the abuse of discretion standard. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex.2007). ■ As a preliminary matter, we note that the tenants filed a separate notice of appeal with respect to the sanctions order

that was entered after the trial court signed the final judgment. However, this notice of appeal does not list White as an appellant. The landlords contend that the tenants lack standing to appeal the sanctions order because it only affects White. In *Braden v. Downey*, 811 S.W.2d 922, 928 n. 6 (Tex.1991), the supreme court reserved this question for future consideration. ("We express no opinion on the question whether, in order to seek review of sanctions by appeal, an attorney must perfect a separate appeal apart from that perfected by his client.") In the absence of an answer to the question in *Braden*, we agree with the landlords' contention that the tenants lack standing to attack the sanctions order. "Texas courts have long held that . . . appealing [parties] may not complain of errors that do not injuriously affect [them] or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex.2000); *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex.1999).

■ Furthermore, the trial court's sanctions order indicates that a hearing was held on the motion for sanctions. However, a record of the hearing has not been filed in this appeal. As was the case with the motion for new trial, without a record of the hearing, we are unable to determine if the trial court abused its discretion in granting sanctions. Additionally, the opinion by the Tyler Court of Appeals reveals that White lacked a good faith basis for making the intrinsic fraud allegation because he did not seek discovery of the landlords' attorney's fees statements during the applicable discovery period. The tenants' seventh issue is overruled.

---

8. The Texas Supreme Court transferred the instant appeal to this court from the Tyler Court of Appeals in a docket control order. The transfer order did not extend to the tenants' subsequent mandamus proceeding.

Finally, the landlords have filed a motion for further sanctions against White based upon the presentation of the tenants' sixth issue. This motion is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed. The landlords' motion for sanctions on appeal is overruled.