

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-12-00779-CV

Shannon L. **JOHNSON** and Javier G. Gonzalez,
Appellants

v.

**WATERS AT ELM CREEK LLC**,
Appellee

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 354267
Honorable Irene Rios, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
        Sandee Bryan Marion, Justice
        Patricia O. Alvarez, Justice

Delivered and Filed:  October 16, 2013

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

This appeal arises from a dispute over the return of a security deposit. After a bench trial, the trial court signed a take-nothing judgment in favor of Waters at Elm Creek, L.L.C., awarding it $18,623.16 in attorneys' fees. On appeal, Shannon Johnson and Javier G. Gonzalez contend the trial court erred in denying their first hybrid motion for summary judgment and that the evidence is legally and factually insufficient to support the trial court's judgment. In an amicus brief, an issue was raised regarding the trial court's order granting Waters at Elm Creek's second motion for sanctions. Before oral argument, this court notified the parties that the court was interested in

hearing arguments on the sanctions issue. For the reasons stated in this opinion, the trial court's order granting the second motion for sanctions is reversed. The remainder of the trial court's judgment is affirmed.

## BACKGROUND

Johnson and Gonzalez signed a lease for an apartment in an apartment complex owned by Waters at Elm Creek. In accordance with the lease, Johnson and Gonzalez paid a $663.00 security deposit. The lease required Waters at Elm Creek to mail the "security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days" after Johnson and Gonzalez surrendered possession of the apartment. Johnson and Gonzalez surrendered possession of the apartment on October 5, 2009.

Johnson subsequently received a check in the amount of $136.11 in the mail with an itemized accounting of the deductions made by Waters at Elm Creek. The accounting was dated October 23, 2009; however, the check was dated November 10, 2009. The postmark on the envelope in which the check and accounting were mailed was dated November 11, 2009.

On November 20, 2009, Johnson and Gonzalez filed a *pro se* original petition against Waters at Elm Creek, alleging Waters at Elm Creek had failed to timely and properly "render an accounting" as a result of its bad faith and had forfeited any right to withhold any portion of the deposit. Johnson and Gonzalez subsequently filed three motions for summary judgment, all of which were denied by the trial court. In its response to the third motion for summary judgment, Waters at Elm Creek requested sanctions, asserting the third motion for summary judgment was groundless and brought in bad faith. The trial court granted the motion for sanctions and ordered Johnson to pay Waters at Elm Creek $500 for the attorney's fees it incurred in responding to the third motion for summary judgment. The deadline for paying the sanctions was April 13, 2012.

On April 16, 2012, Johnson filed a petition for writ of mandamus and motion for temporary relief with this court challenging the sanctions order. Having determined that Johnson had an adequate remedy by appeal, this court issued an order denying the petition on April 17, 2012. Johnson received notice that her petition was denied on April 20, 2012. Upon receiving the notice, Johnson attempted to tender a check in payment of the sanctions to the attorney for Waters at Elm Creek. After the attorney rejected the check as untimely, Johnson deposited the check into the registry of the trial court.

On April 30, 2012, Waters at Elm Creek filed a second motion for sanctions, asserting, "The filing of the Mandamus Proceedings is the type of vexatious litigation that is frivolous, groundless and brought for the purposes of harassment." On May 1, 2012, an attorney filed an appearance of counsel on behalf of Johnson and a motion to set the cause on the non-jury docket. An order was signed on May 1, 2012, setting the cause for trial on June 28, 2012.

On May 8, 2012, a hearing was held on Waters at Elm Creek's second motion for sanctions. At the conclusion of the hearing, the trial court signed an order granting the motion and ordering Johnson to pay $1,500, which the trial court determined were the attorneys' fees "reasonable and necessary for Defendant filing Defendant's Second Motion for Sanctions against [Johnson], preparing to respond to the Mandamus Proceedings, preparing an order thereon and appearing here today."[1] In the order, the trial court expressly finds, "The filing of the Mandamus Proceedings is the type of vexatious litigation that is frivolous, groundless and brought for the purposes of harassment."

On May 16, 2012, the trial was reset to July 20, 2012. After hearing the evidence, the trial court signed a take-nothing judgment in favor of Waters at Elm Creek and awarded it $18,623.16

---

[1] We assume that this language refers to the preparation of an order on the motion for sanctions since this court prepares its own orders in denying mandamus relief.

in attorney's fees. The trial court entered findings of fact and conclusions of law, expressly finding that Waters at Elm Creek "had no intention to deprive [Johnson and Gonzalez] of a lawfully due security deposit refund" and "did not retain [the] security deposit in dishonest disregard of their rights." The trial court further found that all amounts retained by Waters at Elm Creek from the security deposit were reasonable. Finally, the trial court found that Waters at Elm Creek did not retain the security deposit in bad faith or fail to provide a written description and itemized list of damages and charges in bad faith.

## DENIAL OF SUMMARY JUDGMENT

In their first issue, Johnson and Gonzalez assert the trial court erred in denying their first hybrid motion for summary judgment. Where a motion for summary judgment is denied by the trial court and the case is subsequently tried on its merits, the order denying the motion for summary judgment cannot be reviewed on appeal. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *Williams v. Colthurst*, 253 S.W.3d 353, 359-60 (Tex. App.—Eastland 2008, no pet.). At oral argument, Johnson and Gonzalez withdrew this issue in view of the applicable law.

## SUFFICIENCY OF THE EVIDENCE

In their second issue, Johnson and Gonzalez challenge the sufficiency of the evidence to support the trial court's ruling. Specifically, Johnson and Gonzalez contend Waters at Elm Creek did not present sufficient evidence to overcome the presumption that it acted in bad faith or to establish the reasonableness of the deductions it made from the security deposit.

*A.      Section 92.109*

Section 92.109 of the Texas Property Code imposes liability on a landlord who in bad faith either: (1) wrongfully retains a security deposit; or (2) "does not provide a written description and itemized list of damages and charges." TEX. PROP. CODE ANN. § 92.109(a),(b) (West 2007). In a suit brought by a tenant seeking to impose liability on the landlord based on either of the foregoing

grounds, "the landlord has the burden of proving that the retention of any portion of the security deposit was reasonable." *Id*. at § 92.109(c). "A landlord who fails either to return a security deposit or provide a written description and itemization of deductions on or before the 30th day after the date the tenant surrenders possession is presumed to have acted in bad faith." *Id*. at § 92.109(d).

### B.     Standard of Review

In this case, Johnson and Gonzalez brought suit seeking to impose liability on Waters at Elm Creek under section 92.109; accordingly, Waters at Elm Creek had the burden to prove its retention of a portion of the security deposit was reasonable. *Id*. at § 92.109(c). When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue for which it did not have the burden of proof, the party must show that no evidence supports the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). "Evidence is legally sufficient if it 'would enable reasonable and fair-minded people to reach the verdict under review.'" *Id*. (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "We 'credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.'" *Id*. "A factual sufficiency attack on an issue on which the appellant did not have the burden of proof requires the complaining party to demonstrate there is insufficient evidence to support the adverse finding." *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 690-91 (Tex. App.—San Antonio 2012, no pet.). "A reviewing court will reverse the trial court only if the evidence which supports the jury's finding is so weak as to be clearly wrong and manifestly unjust." *Id*. (internal citations omitted). "We may not substitute our judgment for that of the trier of fact or pass on the credibility of the witnesses." *Sunl Group, Inc. v. Zhejiang Yongkang Top Imp. & Exp. Co., Ltd.*, 394 S.W.3d 812, 817 (Tex. App.—Dallas 2013, no pet.).

*C.      Analysis*

The undisputed evidence at trial established that Waters at Elm Creek failed to return the security deposit to Johnson and Gonzalez and failed to provide a written description and itemization of deductions on or before the 30th day after the date Johnson and Gonzalez surrendered possession.  Johnson and Gonzalez surrendered possession on October 5, 2009, and the envelope containing the itemization of charges and the balance of the security deposit was postmarked November 11, 2009.  Accordingly, Waters at Elm Creek is presumed to have acted in bad faith.  TEX. PROP. CODE ANN. § 92.109(d) (West 2007).  The landlord bears the burden to rebut the presumption by presenting evidence that the landlord acted in good faith.  *Pulley v. Milberger*, 198 S.W.3d 418, 428 (Tex. App.—Dallas 2006, pet. denied).

A landlord acts in bad faith if the landlord acts in dishonest disregard of the tenant's rights or intends to deprive the tenant of a lawfully due refund.  *Id*.  Good faith is established by showing "honesty in fact in the conduct or transaction concerned."  *Id*.  "Evidence that a landlord had reason to believe he was entitled to retain a security deposit to recover reasonable damages is sufficient to rebut the presumption of bad faith created by the Texas Property Code."  *Id*.  "Other evidence may include: (1) the landlord is an amateur lessor because the residence is his only rental property; (2) the landlord had no knowledge of the requirement to submit an itemized list of all deductions from the security deposit; (3) extensive damage was done to the residence; (4) the landlord attempted to do some of the repairs himself to save money; or (5) the landlord had a reasonable excuse for the delay, e.g., he was on vacation."  *Id*. at 428-29.

If the landlord is able to defeat the presumption of bad faith with regard to the retention of a security deposit, the landlord also is required to prove that his retention of any portion of the security deposit was reasonable.  *Id*. at 429.  "A landlord's retention of the security deposit may be reasonable if: (1) the tenant is legally liable under the lease or as a result of breaching the lease;

(2) the damages did not exist before the tenant leased the premises; or (3) the damages or charges are equal to or in excess of the security deposit or the amount deducted from the security deposit." *Id.* If the lease imposes an obligation on the tenant to pay for damage to the premises, the landlord is entitled to recover the reasonable cost of repairs. *Id.* The landlord is not required to establish the amount of damages with "mathematical precision" but "needs only to present sufficient evidence to justify a finding [by the trier of fact] that the costs were reasonable and the repairs were necessary." *Id.*

In this case, the trial court as the trier of fact heard conflicting evidence from Johnson and Lori Delayo, the property manager for Waters at Elm Creek.[2] With regard to Johnson receiving the balance of the deposit approximately ten days late, Delayo testified that the check initially was mailed to the address Johnson listed on her notice of intent to move out. The check was then returned to the corporate office of Waters at Elm Creek. When Johnson called Delayo inquiring about the check, she provided Delayo with a new address to which the check was then re-sent. We hold that Delayo's testimony is sufficient evidence to rebut the presumption of bad faith.

With regard to the reasonableness of the deductions Waters at Elm Creek made from the security deposit, Johnson testified that the carpet in the apartment was worn and the paint on the wall was "splotchy" when she moved into the apartment. Johnson noted these conditions on the Inventory and Condition Form which she completed and turned in after moving into the apartment. A copy of the form was introduced into evidence. Although Johnson admitted that she kept a dog in the apartment for approximately one month of her one-year lease term, she testified that the dog was kept in a crate when she was not at home. Johnson testified that Delayo commented that the

---

[2] During oral argument, Johnson's attorney asserted that the trial court sustained his objection to this testimony as hearsay. Although the trial court sustained a later objection to a reference Delayo made to what her accounting department told her, no objection was made to the testimony referenced in this opinion.

apartment was spotless during the walk-through they conducted when Johnson vacated the apartment.

Delayo testified that she smelled a strong odor of dog urine immediately upon opening the door during the walk-through. She stated that the carpet was saturated in urine, requiring the carpet and the pad to be replaced and the concrete under the carpet to be sealed to mask the smell. Delayo also testified that Johnson had attempted to re-paint a wall that had been painted a different color during her tenancy; however, large spots were visible through the paint. Delayo stated that she informed Johnson that the wall would need to be repainted.

The following deductions were made from Johnson's security deposit: (1) $25 light clean; (2) $367.56 carpet replacement with pad; (3) $35.00 pet treatment; (4) $85.58 full paint due to wrong color on walls; (5) $7.00 replaced 1 drip pan; and (6) $7.75 final water bill. The invoice listing the deductions noted that Waters at Elm Creek was actually invoiced $171.16 for the paint, but Johnson was only charged one-half that amount, noting that the paint on the walls did not match the current color used in the apartment requiring the apartment to be painted twice. In addition to the amounts listed in the invoice, Delayo testified to the actual expenses incurred by Waters at Elm Creek. Delayo stated that Waters at Elm Creek was invoiced $55 for the cleaning, but she charged Johnson only $25 because she determined that Johnson had attempted to clean the apartment. In addition, Delayo testified that the full amount of the carpet replacement was between $800 and $850; however, she prorated that amount given the condition of the carpet when Johnson moved into the apartment. Finally, Delayo testified that Waters at Elm Creek paid $125 for the pet treatment, but she charged Johnson only $35.

Although the evidence was conflicting, it was within the trial court's province to assess the witnesses' credibility and determine the weight to be given the testimony. After reviewing the

record, we hold the evidence presented was legally and factually sufficient to support the trial court's finding that the itemized repairs were necessary and the associated costs were reasonable.

## SANCTIONS

Although not asserted by Johnson as a separate issue in her brief, the amicus brief filed in this case raises a challenge to the trial court's second sanctions order. As previously noted, the parties were advised before oral argument to be prepared to address this issue. In the second sanctions order, the trial court imposed sanctions at least in part based on Johnson's filing of an original proceeding in this court challenging the first sanctions order. The trial court's order cites TEX. R. CIV. P. 13 and section 10.002 of the Texas Civil Practice and Remedies Code as a basis for the sanctions.

Rule 13 allows a trial court to impose sanctions if a pleading is groundless and brought in bad faith or groundless and brought for the purpose of harassment. TEX. R. CIV. P. 13. "Groundless" means "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id*.

Section 10.002 of the Texas Civil Practice and Remedies Code allows a trial court to impose sanctions for conduct that violates section 10.001. TEX. CIV. PRAC. & REM. CODE ANN. § 10.002 (West 2002). Section 10.001 permits sanctions to be imposed if: (1) a pleading is presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) a contention in a pleading is not warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) any allegation in the pleading lacks evidentiary support or is likely to lack evidentiary support after a reasonable opportunity for further investigation or discovery; or (4) a denial in a pleading of a factual contention is not warranted on the evidence.

Although the trial court's order relies on Rule 13 and Section 10.002 as the basis for imposing sanctions, Rule 52.11 of the Texas Rules of Appellate Procedure sets forth the procedure for imposing sanctions on a party or attorney in relation to the filing of an original proceeding. TEX. R. APP. P. 52.11. Sanctions are permitted when the party or attorney is not acting in good faith as indicated by: (1) filing a petition that is clearly groundless; (2) bringing the petition solely for delay of an underlying proceeding; (3) grossly misstating or omitting an obviously important and material fact in the petition or response; or (4) filing an appendix or record that is clearly misleading because of the omission of obviously important and material evidence or documents. *Id*.

Johnson's mandamus petition was denied by this court because we determined an adequate remedy by appeal existed. "As a general rule, the denial of mandamus relief due to the existence of an adequate remedy by appeal does not automatically establish that the mandamus petition is so clearly groundless as to warrant sanctions." *In re Lerma*, 144 S.W.3d 21, 26-27 (Tex. App.—El Paso 2004, orig. proceeding). In *Lerma*, the relator had two appeals pending in which the relator raised the same issues as were raised in the mandamus proceeding. 144 S.W.3d at 25. Although the petition was denied because the relator had an adequate remedy by appeal (with an appeal that was actually pending), the El Paso court declined to impose sanctions. *Id*. at 27.

In light of Rule 52.11, we hold that the trial court was without jurisdiction to impose sanctions based on the filing of a mandamus petition in this court. Therefore, we reverse the trial court's order granting the second motion for sanctions and render judgment denying the motion.

## CONCLUSION

The trial court's order granting Waters at Elm Creek's second motion for sanctions is reversed, and judgment is rendered denying the motion. The remainder of the trial court's judgment is affirmed.

Catherine Stone, Chief Justice