**FP STORES, INC., Appellant**

v.

**TRAMONTINA US, INC., Appellee**

**NO. 01–16–00031–CV**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued December 29, 2016

Rehearing Overruled February 23, 2017

Kevin P. Riley, State Bar No. 16929100, Zachary T. Mayer, State Bar No. 24013118, Demetri J. Economou, State Bar No. 24078461, Kane Russell Coleman & Logan PC, 5051 Westheimer Road, Suite 1000, Houston, Texas 77056, for FP Stores, Inc.

Russell C. Jones, The Holoway Jones Law Firm, PLLC, 407 Julie Rivers Drive, Sugar Land, TX 77008, for Tramontina US, Inc.

Panel consists of Justices Keyes, Higley, and Lloyd.

## OPINION

Evelyn V. Keyes, Justice

Appellant, FP Stores, Inc., is the former landlord of appellee, Tramontina US, Inc. Tramontina sued FP Stores for breach of contract and violation of Texas Property Code section 93.011, alleging that FP Stores retained its security deposit in bad faith. The trial court granted summary judgment in favor of Tramontina, and FP Stores appealed. We hold that FP Stores presented more than a scintilla of evidence that it acted in good faith and that its performance was rendered impossible, which raises fact issues precluding summary judgment. Therefore, we reverse the trial court's order granting summary judgment and remand for further proceedings.

## Background

### ProLogis enters into a lease with FP Stores, and FP Stores enters into a sublease with Tramontina

In August 2010, ProLogis Texas II, LLC, as lessor, and Daryl Flood Logistics, Inc., as lessee, entered into a commercial lease of premises located in Sugar Land, Texas. In March 2013, Daryl Flood Logistics assigned the lease to FP Stores. And in September 2014, FP Stores subleased part of the leased premises to Tramontina.

As part of the sublease, Tramontina paid FP Stores a $50,000.00 security deposit. The sublease required FP Stores to refund the security deposit, less any authorized deductions, within sixty days after Tramontina surrendered the leased premises and provided FP Stores with its forwarding address:

> Within 60 days after Sublessee surrenders the leased premises and provides Sublessor written notice of Sublessee's forwarding address, Sublessor will refund the security deposit less any amounts applied toward amounts owed by Sublessee or other charges authorized by this sublease.[1]

### The lease and sublease terminate, and ProLogis enters into a new lease with Tramontina

On March 8, 2015, the lease between ProLogis and FP Stores and the sublease between FP Stores and Tramontina both terminated. FP Stores vacated the leased premises, and Tramontina and ProLogis entered into a new lease under which Tramontina leased all of the leased premises from ProLogis.

### Tramontina demands the return of its sublease security deposit from FP Stores

After the termination of the sublease, FP Stores' Neil Wantanabe and Sandy Menichelli received a letter, dated March 13, 2015, from Tramontina's Chuck Silverman. In the letter, Silverman provided FP Stores with Tramontina's forwarding address and requested the prompt return of Tramontina's security deposit. And he warned that if FP Stores failed to promptly return the deposit, FP Stores could be liable to Tramontina for up to three times the amount of the deposit and related attorney's fees and costs.

On March 19, 2015, Menichelli responded to Silverman's letter via email. Menichelli stated that the return of Tramontina's security deposit was subject to ProLogis's inspection of the leased premises. Menichelli further stated that FP Stores had just received the final results of that inspection, was currently identifying the remedial items relating to Tramontina's sublease, and would provide Tramontina an accounting in the next day or so.

More than two months passed, but Tramontina never received a refund of its security deposit or an accounting from FP Stores. On May 20, 2015, Wantanabe and Menichelli received a demand letter from Silverman. In the letter, Silverman stated that, under Texas law, FP Stores' failure to return Tramontina's security deposit subjected FP Stores to a penalty of three times the amount of the security deposit plus $100.00. Silverman demanded the penalty, amounting to $150,100.00, on behalf of Tramontina. He concluded the letter by making a settlement offer, stating that, to avoid litigation, Tramontina would accept a payment of $50,000.00 on or before May 26, 2015.

Later that day, Menichelli called Silverman and left him a voice message. In the voice message, she said she had received his demand letter and apologized for FP Stores having "dropped the ball." She explained that FP Stores had undergone "some management changes" and that the refund of Tramontina's security deposit had "slipped through the cracks ...." Menichelli further stated that she "had

---

1. This provision of the sublease is similar to Property Code section 93.005(a). TEX. PROP. CODE ANN. § 93.005(a) (West 2014) ("The landlord shall refund the security deposit to the tenant not later than the 60th day after the date the tenant surrenders the premises and provides notice to the landlord or the landlord's agent of the tenant's forwarding address under Section 93.009.").

actually had a meeting with [her] team" the day before to determine "who dropped the ball" and to make clear that the issue "need[ed] to be addressed right away." She said that Silverman's demand letter validated her concern that the issue had not yet been resolved and that an FP Stores representative was going to try to inspect the leased premises that day. She concluded the message by telling Silverman that FP Stores would "move quickly and get back to [him]."

The next day, on May 21, 2015, Menichelli called Silverman again and left him another voice message. She said that FP Stores had "made some progress" and that she had arranged for someone to inspect the leased premises. She explained that FP Stores had not received its security deposit from ProLogis and was trying to schedule the inspection for May 22. She admitted again that the refund of the security deposit fell through the cracks but said she was now making progress and would hopefully provide him another update on May 22.

On May 26, 2015, the deadline for Tramontina's settlement offer expired. As of that date, FP Stores still had not inspected the leased premises and still had not provided Tramontina with a refund or an accounting.

### FP Stores attempts to inspect the leased premises

On May 27, 2015, Menichelli emailed ProLogis vice president Jacob Milligan to arrange for an FP Stores representative to inspect the leased premises. Menichelli apologized for having taken so long to email Milligan, stating that FP Stores had undergone some turnover and been a bit sidetracked. Menichelli further stated that she wanted an FP Stores representative to review ProLogis's list of remedial items with Milligan so that FP Stores could identify the remedial items attributable to Tramontina and thus prepare Tramontina's security deposit refund, which, she noted, Tramontina was eager to receive.

Milligan emailed Menichelli a response, which he cc'd to Patrick Hudgens, ProLogis's director of property management. Milligan told Menichelli that the contractor hired by ProLogis to make the repairs to the leased premises had already completed the work. Milligan further noted that FP Stores owed ProLogis an outstanding balance as a result of the cost of the contractor's repairs.

That same day, Menichelli sent Milligan and Hudgens another email. Menichelli said she had not heard anything about FP Stores' outstanding balance. She went on to state that she was trying to determine which portion of the remedial work related to Tramontina's sublease so that FP Stores could refund the correct amount of Tramontina's security deposit. Menichelli said FP Stores had "an idea of which items on the punch list related to [Tramontina] but wanted a walk through to confirm . . . ." Menichelli said that once FP Stores inspected the leased premises they could "have a call to figure out how [to] finalize everything."

Two days later, on May 29, 2015, Milligan emailed Menichelli and Hudgens a response to Menichelli's last email. Milligan told Menichelli that ProLogis "did not note any conditions related to Tramontina's use in the move out inspection" and that the part of the leased premises that Tramontina had subleased "was actually in very good condition." Milligan said he did not understand why ProLogis had "to be involved in an additional inspection/dispute between Tramontina and FP Stores." He stated that ProLogis's "primary concern [was] the outstanding balance owed by FP Stores due to not completing the items from the move out inspection."

Later that day, Menichelli emailed Milligan and Hudgens a response. Menichelli asked them to let her know when an FP Stores representative could inspect the leased premises. Menichelli explained that she had never been to the leased premises and therefore could not tell from ProLogis's report which items were attributable to Tramontina. She further explained that she had shared ProLogis's report with other FP Stores employees and that they had identified certain items that they believed were attributable to Tramontina. Menichelli said it would be helpful if someone from ProLogis would inspect the leased premises with someone from FP Stores and "check off each of the items and its location." Menichelli also noted that, although Milligan had stated that FP Stores had an outstanding balance, she had not received any kind of invoice. She therefore asked Milligan to send her an invoice with supporting documentation. Once she received the invoice, an FP Stores representative would have to "walk the space and verify that the work was done."

### Tramontina sues FP Stores for failing to return its deposit

On June 5, 2015, Tramontina sued FP Stores for failing to provide Tramontina a refund of its security deposit. Tramontina asserted a claim for breach of contract, alleging that FP Stores breached the provision in the sublease requiring FP Stores to refund the security deposit within sixty days after Tramontina surrendered the leased premises and provided FP Stores with its forwarding address. Tramontina also asserted a claim for violation of Property Code section 93.011, alleging that FP

Stores had retained Tramontina's security deposit in bad faith.[2]

### FP Stores continues to attempt to inspect the leased premises

On June 8, 2015, Menichelli sent Milligan and Hudgens another email. Menichelli noted that she still had not received a response to her request for dates on which an inspection could take place and again asked when FP Stores could inspect the leased premises.

Later that day, Hudgens emailed Menichelli a response. He told Menichelli that ProLogis "respectfully decline[d]" FP Stores' "request to revisit the site." He explained that ProLogis had no obligation to allow FP Stores to inspect the leased premises and did not want to impose on its current customer, Tramontina.

### Tramontina moves for summary judgment

On July 28, 2015, Tramontina moved for summary judgment on its claims for breach of contract and violation of Property Code section 93.011. Tramontina argued that the evidence conclusively proved that FP Stores failed to timely provide Tramontina with a refund or an accounting and that, therefore, FP Stores' bad faith was presumed under Property Code section 93.011(d). Tramontina further argued that, although FP Stores had asserted good faith as an affirmative defense, there was no evidence that FP Stores actually did act in good faith. Thus, Tramontina argued, FP Stores' bad faith was established as a matter of law. Tramontina supported its motion with affidavits from Silverman, a verified copy of the sublease, verified copies of Silverman's letters to

**2.** As discussed more thoroughly below, Section 93.011 provides that a commercial landlord who in bad faith retains a security deposit is liable to the tenant for statutory damages and related fees and costs. It includes a burden-shifting provision that creates a presump-

tion of bad faith if the tenant shows that the landlord failed to provide a refund of the security deposit or an itemized accounting of deductions within sixty days of the tenant surrendering possession of the premises. Tex. Prop. Code Ann. § 93.011(a), (d) (West 2014).

Wantanabe and Menichelli, and verified transcripts of the voice messages Menichelli had left Silverman.

On August 8, 2015, FP Stores responded to Tramontina's motion for summary judgment. FP Stores supported its response with an affidavit from Menichelli.

In her affidavit, Menichelli stated that, after ProLogis provided FP Stores with information regarding the repairs needed for the leased premises, she asked for an opportunity to have FP Stores' representative walk through the premises and determine which repairs were the responsibility of Tramontina and which were the responsibility of FP Stores. But, Menichelli continued, ProLogis refused FP Stores' request. Thus, Menichelli claimed, FP Stores had "been prevented from sending an itemized statement detailing the charges that were [Tramontina's] responsibility and the amount of [Tramontina's] security deposit FP could refund." Menichelli further noted that FP Stores' sublease with Tramontina was the first time FP Stores had acted as a landlord in Texas.

## FP Stores inspects the leased premises

On September 1, 2015, the day after the hearing on Tramontina's summary judgment motion, FP Stores inspected the leased premises for the first time. FP Stores determined that $31,381.44 in damages to the leased premises was attributable to Tramontina.

## The trial court grants Tramontina's motion for summary judgment

On September 16, 2015, the trial court signed an order granting Tramontina summary judgment on its claim for breach of contract and its claim for violation of Property Code section 93.011. The trial court found that FP Stores had provided no evidence, or no more than a scintilla of evidence, in support of its affirmative defense of good faith. The trial court awarded Tramontina $50,000.00 in damages on its breach of contract claim, $150,100.00 in statutory damages on its claim for violation of Property Code section 93.011, and $25,000.00 in conditional appellate attorney's fees.

## FP Stores provides Tramontina with a refund and an accounting and moves for a new trial

After the trial court granted Tramontina's motion for summary judgment, Tramontina received a letter from FP Stores. Attached to the letter was an itemized accounting prepared by FP Stores' real estate manager.

In the letter, FP Stores informed Tramontina of the results of FP Stores' inspection of the leased premises. The letter stated that FP Stores had determined that it owed Tramontina a security deposit refund of $18,618.56, representing the difference between Tramontina's $50,000.00 security deposit and the $31,381.44 in damages identified by FP Stores. The letter further stated that a check for $18,618.56 would be sent directly from FP Stores.

On October 16, 2015, FP Stores filed a motion for new trial. In its motion, FP Stores argued that the evidence raised "numerous fact issues precluding summary judgment ...." According to FP Stores, this included evidence that:

- FP Stores acted reasonably and in good faith;
- FP Stores was initially prevented from inspecting the leased premises and thus determining the refund it owed Tramontina; and
- Tramontina was responsible for much of the damage to the leased premises.

In its response, Tramontina argued that the evidence showed that FP Stores failed to act during the sixty-day period following Tramontina's surrender of the subleased

premises and that this proved as a matter of law that FP Stores acted in bad faith.

On November 23, 2015, the trial court signed an order denying FP Stores' motion for new trial. In the order, the trial court stated that FP Stores offered no evidence rebutting the presumption of bad faith during the period between the termination of the lease and sixty days thereafter. FP Stores appealed.

## Discussion

In its third issue, FP Stores contends that the evidence raised genuine issues of material fact precluding summary judgment on Tramontina's claims for breach of contract and violation of Property Code section 93.011. FP Stores contends that it presented evidence that it acted in good faith and that its performance was rendered impossible, which, in turn, raised fact issues precluding summary judgment.

### A. Standard of Review

We review de novo the trial court's ruling on a summary judgment motion. *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 642 (Tex. App.–Houston [1st Dist.] 2015, no pet.). To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *Id.* at 643.

When, as here, the plaintiff moves for summary judgment, it must conclusively prove all elements of its cause of action as a matter of law. *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.–Houston [1st Dist.] 2014, no pet.). A matter is conclusively proven if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id.*

When a movant meets its burden of establishing each element of the claim on which it seeks summary judgment, the burden then shifts to the nonmovant to disprove or raise an issue of fact as to at least one of those elements. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014); *Lujan*, 433 S.W.3d at 704. The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Lujan*, 433 S.W.3d at 704–05. "A fact issue exists if there is more than a scintilla of probative evidence." *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013).

To defeat summary judgment by raising an affirmative defense, the nonmovant must do more than just plead the affirmative defense. *Lujan*, 433 S.W.3d at 704. The nonmovant must come forward with evidence sufficient to raise a genuine issue of material fact on each element of its affirmative defense. *Id.*

To determine whether the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 705. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

### B. Applicable Law

#### 1. Texas Property Code

The Property Code grants a commercial tenant the right to sue a landlord for retaining a security deposit in bad faith. Section 93.011 provides:

(a) A landlord who in bad faith retains a security deposit in violation of this chapter is liable for an amount equal to the sum of $100, three times the portion of the deposit wrongfully withheld, and the tenant's reasonable attorney's fees in-

curred in a suit to recover the deposit after the period prescribed for returning the deposit expires.

(b) A landlord who in bad faith does not provide a written description and itemized list of damages and charges in violation of this chapter:

  (1) forfeits the right to withhold any portion of the security deposit or to bring suit against the tenant for damages to the premises; and

  (2) is liable for the tenant's reasonable attorney's fees in a suit to recover the deposit.

(c) In a suit brought by a tenant under this chapter, the landlord has the burden of proving that the retention of any portion of the security deposit was reasonable.

(d) A landlord who fails to return a security deposit or to provide a written description and itemized list of deductions on or before the 60th day after the date the tenant surrenders possession is presumed to have acted in bad faith.

TEX. PROP. CODE ANN. § 93.011 (West 2014).

▮▮ Thus, statutory damages under section 93.011 are "predicated on a determination that the landlord retained the deposit 'in bad faith.'" *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 106–07 (Tex. App.–Houston [1st Dist.] 2013, no pet.). If the tenant shows that the landlord failed either to return the tenant's security de-posit or to provide the tenant a written description and itemized list of deductions within sixty days of the tenant surrendering possession of the leased premises, then it is presumed that the landlord acted in bad faith, and the burden shifts to the landlord to rebut the presumption. TEX. PROP. CODE ANN. § 93.011(d); *Eun Bok Lee*, 411 S.W.3d at 107. If the landlord fails to offer rebutting evidence, its bad faith is established as a matter of law.

There is a dearth of case law construing and applying section 93.011.[3] For guidance, then, we look to the more developed body of case law construing and applying Property Code section 92.109—a parallel statute that applies to residential tenancies. Section 92.109 provides:

(a) A landlord who in bad faith retains a security deposit in violation of this subchapter is liable for an amount equal to the sum of $100, three times the portion of the deposit wrongfully withheld, and the tenant's reasonable attorney's fees in a suit to recover the deposit.

(b) A landlord who in bad faith does not provide a written description and itemized list of damages and charges in violation of this subchapter:

  (1) forfeits the right to withhold any portion of the security deposit or to bring suit against the tenant for damages to the premises; and

---

**3.** Our research revealed only five opinions that cite section 93.011. *See Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95 (Tex. App.–Houston [1st Dist.] 2013, no pet.); *Lone Starr Multi–Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688 (Tex. App.–Houston [1st Dist.] 2011, no pet.); *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884 (Tex. App.–Texarkana 2009, pet. denied); *EDG Prop. Mgmt., Inc. v. Ratnani*, 279 S.W.3d 905 (Tex. App.–Dallas 2009, no pet.); *Cammack the Cook,* *L.L.C. v. Eastburn*, 296 S.W.3d 884 (Tex. App.–Texarkana 2009, pet. denied); *Broken Spoke Club, Inc. v. Butler*, No. 2–02–116–CV, 2004 WL 1858119 (Tex. App.–Fort Worth Aug. 19, 2004, no pet.) (mem. op.). None of these opinions define "bad faith" in the context of Property Code section 93.011. None of them discuss the evidence needed to rebut the presumption of bad faith. And none of them involve an appeal from an order granting summary judgment for the tenant.

(2) is liable for the tenant's reasonable attorney's fees in a suit to recover the deposit.

(c) In an action brought by a tenant under this subchapter, the landlord has the burden of proving that the retention of any portion of the security deposit was reasonable.

(d) A landlord who fails either to return a security deposit or to provide a written description and itemization of deductions on or before the 30th day after the date the tenant surrenders possession is presumed to have acted in bad faith.

Tex. Prop. Code Ann. § 92.109 (West 2014).

Case law analyzing section 92.109 addresses both what constitutes "bad faith" and how a residential landlord may rebut the presumption that it acted in bad faith. These cases hold that a residential landlord acts in bad faith if it either "acts in dishonest disregard of the tenant's rights or intends to deprive the tenant of a lawfully due refund." *Johnson v. Waters at Elm Creek, L.L.C.*, 416 S.W.3d 42, 47 (Tex. App.–San Antonio 2013, pet. denied).[4] These cases further hold that, to rebut the presumption of bad faith, the landlord must prove its good faith—that is, the landlord must prove " 'honesty in fact in the conduct or transaction concerned.' " *Hardy v. 11702 Mem'l, Ltd.*, 176 S.W.3d 266, 271 (Tex. App.–Houston [1st Dist.]

2004, no pet.) (quoting *Wilson v. O'Connor*, 555 S.W.2d 776, 780 (Tex. Civ. App.–Dallas 1977, writ dism'd)).[5]

For example, in *Pulley v. Milberger*, the Dallas Court of Appeals affirmed a trial court's judgment in favor of a residential landlord in part because the evidence showed that the landlord was an amateur lessor who believed he could retain the security deposit due to the damage to the property. 198 S.W.3d 418, 430–31 (Tex. App.–Dallas 2006, pet. denied). In its opinion, the court discussed the evidence necessary to rebut the presumption of bad faith, stating:

Evidence that a landlord had reason to believe he was entitled to retain a security deposit to recover reasonable damages is sufficient to rebut the presumption of bad faith created by the Texas Property Code. Other evidence may include: (1) the landlord is an amateur lessor because the residence is his only rental property; (2) the landlord had no knowledge of the requirement to submit an itemized list of all deductions from the security deposit; (3) extensive damage was done to the residence; (4) the landlord attempted to do some of the repairs himself to save money; or (5) the landlord had a reasonable excuse for the delay, e.g., he was on vacation.

*Id.* at 428–29 (citations omitted).[6]

■ The section 92.109 case law is instructive here. Accordingly, we hold that,

---

4. *See also Hardy v. 11702 Mem'l, Ltd.*, 176 S.W.3d 266, 271 (Tex. App.–Houston [1st Dist.] 2004, no pet.) ("Bad faith implies an intention to deprive the tenant of a lawfully due refund."); *Pulley v. Milberger*, 198 S.W.3d 418, 428 (Tex. App.–Dallas 2006, pet. denied) ("A landlord acts in bad faith when he retains the security deposit in dishonest disregard of the tenant's rights."); *Minor v. Adams*, 694 S.W.2d 148, 151 (Tex. App.–Houston [14th Dist.] 1985, no writ) ("The test of bad faith is whether a person acted in dishonest disregard of the rights of the person concerned.").

5. *See also Johnson v. Waters at Elm Creek, L.L.C.*, 416 S.W.3d 42, 47 (Tex. App.–San Antonio 2013, pet. denied) ("Good faith is established by showing 'honesty in fact in the conduct or transaction concerned.' "); *Pulley*, 198 S.W.3d at 428 ("To defeat the presumption of bad faith, the landlord must prove his good faith, i.e., honesty in fact in the conduct or transaction concerned.").

6. *See also Leskinen v. Burford*, 892 S.W.2d 135, 136–37 (Tex. App.–Houston [14th Dist.] 1994, no writ) (landlord did not act in bad faith when it failed to return security deposit

under Property Code section 93.011, a commercial landlord retains a tenant's security deposit in bad faith if it retains the security deposit in dishonest disregard of the tenant's rights or with the intent to deprive the tenant of a lawfully due refund. *See Johnson*, 416 S.W.3d at 47. If the tenant shows that the landlord failed to timely provide a refund of the security deposit or an accounting, then it is presumed that the landlord acted in bad faith. TEX. PROP. CODE ANN. § 93.011(d).

To rebut the presumption to defeat a tenant's motion for summary judgment, the landlord must present more than a scintilla of evidence that it acted in good faith. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (in reviewing trial court's grant of summary judgment, appellate courts "must determine whether there is more than a scintilla of probative evidence raising genuine issues of material fact"); *Wilson*, 555 S.W.2d at 780 ("If the landlord presents evidence of a reasonable excuse for the delay, then a fact issue is presented on which the landlord has the burden of proof."). That is, the landlord must present more than a scintilla of evidence of "honesty in fact in the conduct or transaction involved"—that it acted with an honest regard for the tenant's rights and the intent to provide the tenant with a refund and an accounting.

### 2. Impossibility

█ FP Stores pleaded impossibility (also known as impracticability) as an affirmative defense. "'An affirmative defense does not tend to rebut factual propositions asserted by a plaintiff, but seeks to establish an independent reason why the plaintiff should not recover.'" *Internacional Realty, Inc. v. 2005 RP W., Ltd.*, 449 S.W.3d 512, 529 (Tex. App.–Houston [1st Dist.] 2014, pet. denied) (quoting *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991)).

█ "[I]mpossibility is a defense to a cause of action for breach of contract." *Id.* at 527. Under the doctrine of impossibility, "[w]here a party's performance is made impracticable by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged." *Id.* (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992)) (internal quotations and ellipses omitted). Unless the facts are uncontested, whether the performance of a contractual duty has been rendered impossible or impracticable is generally a question for the jury. *See Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.*, 118 S.W.3d 60, 65 (Tex. App.–Houston [14th Dist.] 2003, pet. denied), *opinion supplemented on overruling of reh'g*, 118 S.W.3d 929 (Tex. App.–Houston [14th Dist.] 2003, no pet.).

### C. Evidence Precluding Summary Judgment

█ At the summary judgment hearing, Tramontina offered uncontroverted evi-

---

or to furnish itemization within thirty days after property was surrendered, considering his status as amateur lessor, extensive damage done to residence, landlord's attempts to do some repairs himself to save money, his mailing of written itemization within five days of deadline, and his offer to refund portion of security deposit); *Ackerman v. Little*, 679 S.W.2d 70, 74 (Tex. App.–Dallas 1984, no writ) (evidence that landlord was unaware of statutory duty to provide refund or account-

ing by date certain and was amateur lessor is probative of good faith); *Wilson v. O'Connor*, 555 S.W.2d 776, 781 (Tex. Civ. App.–Dallas 1977, writ dism'd) (holding that fact issue as to landlord's good faith was raised where evidence showed that landlord did not return deposit by statutory deadline because of her absence on vacation, and that, when she returned, she inspected property, made deductions for cleaning and repairs, and refunded balance to tenant).

dence that FP Stores did not return Tramontina's security deposit or provide Tramontina an accounting within sixty days of Tramontina surrendering the subleased premises. This uncontroverted evidence triggered section 93.011(d)'s presumption that FP Stores retained Tramontina's security deposit in bad faith. *See* TEX. PROP. CODE ANN. § 93.011(d). The burden then shifted to FP Stores to raise a genuine issue of material fact precluding summary judgment. To meet its burden, FP Stores had to present more than a scintilla of evidence that it acted in good faith. *See Buck*, 381 S.W.3d at 527; *Wilson*, 555 S.W.2d at 781. That is, FP Stores had to present more than a scintilla of evidence that it acted with an honest regard for Tramontina's rights and the intent to provide Tramontina with a refund and an accounting.

FP Stores contends that two items of summary judgment evidence show that FP Stores retained Tramontina's security deposit in good faith: (1) Menichelli's affidavit, which was offered by FP Stores; and (2) Menichelli's voice messages to Silverman, which were offered by Tramontina.

In her summary judgment affidavit, Menichelli testified that after FP Stores surrendered possession of the leased premises, ProLogis refused to permit FP Stores to return to perform an inspection to determine which damages were attributable to Tramontina. She further testified that, other than its sublease with Tramontina, FP Stores had not leased any commercial real estate in Texas. And in her voice messages to Silverman, Menichelli admitted that FP Stores had unintentionally "dropped the ball" and let the refund of Tramontina's security deposit "fall through the cracks" due in part to "some management changes." But she also said that FP Stores was "making progress" on arranging an inspection of the leased

premises and providing Tramontina with its refund.

FP Stores argues that this evidence shows that FP Stores did not intend to deprive Tramontina of its right to a refund of its security deposit; instead, it shows that FP Stores was an inattentive and inexperienced landlord that initially "dropped the ball" and then attempted to inspect the premises to determine the amount owed to Tramontina but was prevented from doing so by ProLogis.

FP Stores emphasizes that the lease at issue here was a sublease. As a sublessor, FP Stores did not own the leased premises, and thus did not have access to or control over the leased premises after the lease and sublease terminated on the same date. The nature of the sublease, FP Stores argues, underscores that its delay refunding Tramontina's security deposit was not in bad faith.

We hold that FP Stores presented more than a scintilla of evidence that it acted in good faith, thus precluding summary judgment on Tramontina's claim for violation of Property Code section 93.011. Indulging every reasonable inference and resolving any doubts in FP Stores' favor, Menichelli's affidavit and voice messages show that FP Stores acted with an honest regard for Tramontina's rights and did not intend to deprive Tramontina of its lawfully due refund—that it initially "dropped the ball" and then attempted, in good faith, to inspect the premises, but was prevented from doing so by ProLogis.

■ We further hold that FP Stores presented more than a scintilla of evidence supporting its affirmative defenses of impossibility. Indulging every reasonable inference and resolving any doubts in FP Stores' favor, Menichelli's affidavit and voice messages show that ProLogis refused to permit FP Stores to return to

inspect the leased premises to determine the damages attributable to Tramontina. That ProLogis would permit FP Stores to inspect the leased premises after the termination of the sublease was a basic assumption on which FP Stores' contractual duty was predicated. *See Internacional Realty,* 449 S.W.3d at 527 ("Where a party's performance is made impracticable by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged.").

Tramontina maintains that the summary judgment evidence proved as a matter of law that FP Stores both breached the sublease and acted in bad faith. According to Tramontina, this evidence includes:

- Menichelli's emails with Milligan and Hudgens, which show that FP Stores did not even request to inspect the premises until May 27, 2015—almost three weeks after FP Stores' statutory deadline to provide Tramontina with a refund or an accounting;

- Silverman's March 13 letter to Wantanabe and Menichelli, which shows that FP Stores was, in fact, aware of Property Code section 93.011;[7]

- the fact that Menichelli also serves as vice president of National Stores, FP Stores' parent company, which shows that FP Stores is not, or cannot fairly claim to be, an amateur or unsophisticated lessor, since National Stores allegedly operates numerous locations throughout Texas; and

7. We note that, although the letter stated that FP Stores could be liable for failing to promptly return Tramontina's security deposit, the letter did not actually identify the statute imposing such liability.

8. Because this issue is dispositive, we need not address FP Stores' other three issues, in

- the fact that FP Stores employed a real estate manager, which shows that FP Stores is not an amateur lessor.

All this evidence supports Tramontina's claims. But it does not prove that Tramontina is entitled to judgment as a matter of law, as FP Stores met its comparatively low burden of presenting more than a scintilla of conflicting probative evidence. Accordingly, we hold that the trial court erred in granting Tramontina's motion for summary judgment and therefore sustain FP Stores' third issue.[8]

## Conclusion

We reverse the trial court's order granting Tramontina's motion for summary judgment and remand for further proceedings.

which FP Stores contends that the trial court erred by failing to allow adequate time for discovery, refusing to grant a motion for continuance before the summary judgment hearing, and refusing to consider newly discovered evidence after granting summary judgment.