**Affirmed and Majority Opinion and Dissenting Opinion filed August 15, 2019.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-17-00991-CV

### FRANK ZHANG AND DAXWELL GROUP, LLC, Appellants

### V.

### CAPITAL PLASTIC & BAGS, INC., Appellee

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-22591**

## MAJORITY OPINION

Capital Plastic & Bags, Inc. ("CPB"), a commercial tenant, sued its landlord for breach of contract and violation of Texas Property Code section 93.011, alleging that Frank Zhang and Daxwell Group, LLC retained its security deposit in bad faith. After conducting a bench trial, the trial court entered final judgment in favor of CPB. We affirm.

## I.     Background

This case involves the sale and lease back of a manufacturing facility located in Houston, Texas.  Jeff Quan, the owner of CPB, agreed to a commercial transaction whereby there would be a sale of the building from CPB to Zhang or his assigns, with a lease back of a portion of the space.  The sale contract provided for a soft close date.  The sale closed and funded on January 4, 2007.  The lease began on the date of closing and continued sixty (60) months.  On January 3, 2007, "Frank Zhang or Assigns," as landlord, and CPB, as tenant, entered into a commercial lease, wherein landlord leased approximately 96,000 square feet of warehouse space located in Houston, Harris County, Texas ("Premises"), to CPB for an initial term of five years.

CPB paid its $34,560 security deposit, took possession of the Premises, and subsequently vacated and surrendered possession of the Premises in accordance with the terms of the lease.  On or about January 3, 2012, after appellants' third-party inspection of the Premises at the end of December 2012, appellee's President, Jeff Quan, met with appellant Zhang at the Premises and surrendered the keys.  Appellant Zhang permitted CPB to leave two small pieces of equipment in the Premises to be moved out at a later date.  The parties dispute whether CPB is liable for any holdover rent. CPB contends that it surrendered keys and possession to the "landlord" and there was no discussion regarding holdover rent.

CPB surrendered the premises and provided appellants with written notice of notice of its forwarding address, in accordance with paragraph 5 C. of the lease.[1]

---

[1] Paragraph 5 C of the lease provides as follows:

Within 60 days after Tenant surrenders the leased premises and provides Landlord written notice of Tenant's forwarding address, Landlord will refund the security deposit less any amounts applied toward amounts owed by Tenant or other charges authorized by this lease.

Appellants failed to return CPB's $34,560 security deposit within 60 days. Thereafter, CPB sent email requests for a refund of its security deposit, on March 28, 2012, and May 28, 2012, and again by certified mail on February 5, 2013. Appellants failed to provide an accounting or refund CPB's security deposit within 60 days of any of those dates.

On April 16, 2013, CPB filed this lawsuit to recover the full amount of the security deposit, along with additional damages pursuant to section 93.011 of the Texas Property Code.[2] CPB alleges both Zhang and Daxwell were the "landlord" under the lease and they are jointly and severally liable for damages. On July 15, 2015, Daxwell and Zhang filed their original answer. On October 8, 2013, Zhang and Daxwell filed their counterclaim, asserting that the amount owed to them by CPB was $180,864.54, less CPB's security deposit of $34,560, for a net total owed to them by CPB of $146,304.54. Daxwell brought breach of contract and offset counterclaims against CPB and a third-party claim against Jeff Quan, President of CPB, for breach of personal guaranty.

In December 2014, Zhang filed a no-evidence motion for summary judgment against CPB. Zhang argued that "no evidence has been proffered by Plaintiff to show that Mr. Zhang is a proper party to this lawsuit." According to Zhang, Zhang was the President of Daxwell, but Daxwell was the owner and landlord of the Premises. Zhang contends he executed the lease, but on behalf of Daxwell, not in his individual capacity. CPB filed its response maintaining Zhang is a proper party and attached as evidence a copy of the lease which names "Frank Zhang or Assigns" as the landlord, and which includes Zhang's signature on the lease and on the Commercial Lease Guaranty, where he signed as a guarantor of

_____

[2] Appellants' failure to timely itemize, render an accounting for, and refund CPB's security deposit creates a statutory presumption under the Texas Property Code that appellants acted in bad faith. *See* Tex. Prop. Code § 93.011(d).

the lease. CPB also noted Zhang initialed a multitude of pages in the lease, exhibits, addendum and rules.

CPB noted that there was no evidence of an assignment of the lease.

On January 14, 2015, the trial court denied Zhang's no-evidence motion for summary judgment.

The case proceeded to trial without a jury on April 22, 2015, and again on November 8, 2016. Instead of a closing oral argument to the court, the parties submitted closing briefs. On July 6, 2017, CPB moved the court to enter final judgment.

On October 2, 2017, the court rendered final judgment for CPB on all of its claims against Daxwell and Zhang. The trial court found that Zhang and Daxwell breached their lease agreement with CPB by wrongfully failing to return CPB's security deposit, which caused CPB damages in the amount of $34,560. The trial court found, pursuant to section 93.011 of the Texas Property Code, CPB was entitled to a judgment in the amount of $100 plus three times the wrongfully withheld amount, for a total judgment of $103,780, together with pre- and post-judgment interest and reasonable attorney's fees. Additionally, the trial court found CPB did not breach its lease agreement with Zhang and Daxwell. The court awarded CPB reasonable attorney's fees and expenses in the amount of $50,585.26. The court ordered Daxwell to take nothing on its third-party claim against Quan. Finally, the court ordered "[a]ll relief requested in this case and not expressly granted is denied. This judgment finally disposes of all parties and claims and is appealable."

On November 16, 2017, the trial court entered its findings of fact and conclusions of law. The trial court entered 47 separate findings of fact and 14

4

conclusions of law.  On November 22, 2017, Daxwell and Zhang moved the court to enter additional findings and conclusions.  This appeal timely followed.

## II.    Analysis

In three issues, appellants argue that the trial court erred by:  (1) refusing to grant appellants' request to enter additional and amended findings of fact and conclusions of law; (2) finding Zhang and Daxwell were both landlords; and (3) finding Zhang and Daxwell failed to overcome the bad-faith presumption for withholding a commercial lease deposit.

### A.    Additional and amended findings of fact and conclusions of law

In their first issue, appellants complain about the trial court's failure to make additional findings of fact and/or conclusions of law.  Appellants argue they timely challenged the adequacy of the trial court's findings of fact and conclusions of law and suffered harm by the trial court's refusal to make such additional or modified findings.

### 1.    Applicable law.

A party may request additional or amended findings of fact and conclusions of law if the party believes that the court's findings and conclusions are deficient in some way. *Nicholas v. Envtl. Sys. (Int'l) Ltd.*, 499 S.W.3d 888, 894 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing Tex. R. Civ. P. 298); *see Collins v. Walker*, 341 S.W.3d 570, 574 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (losing party may request additional findings on omitted elements to prevent them from being deemed on appeal).  The trial court, as the trier-of-fact, however, has no duty make additional or amended findings that are unnecessary or contrary to its judgment; a trial court is only required to make additional findings and conclusions

5

that are appropriate. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 254 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citations omitted).

If a party requests additional findings and conclusions, the request "should sharpen, not obfuscate, the issues for appeal." *Vickery*, 5 S.W.3d at 255. "A request for negative findings will rarely apprise the trial court that it has omitted an essential element in its original findings." *Id.*, at 254. Failure to make additional findings and conclusions may constitute reversible error if the appellant is prevented from adequately presenting the matter being complained of on appeal. *See id.*, at 256.

If an appellant challenges a trial court's failure to make additional findings, the reviewing court must address the issue on its merits; it cannot simply conclude from the court's failure to make additional findings that the court resolved the factual disputes contrary to the appellant's position. *Vickery*, 5 S.W.3d at 258. When an appellant properly requests additional findings of fact, the appellate court must consider whether such findings should have been made and whether the trial court's failure to make such findings has prejudiced the appellant.[3] *Id.* at 257.

## 2. Additional and amended findings of fact and conclusions of law were not appropriate

### a. Finding of fact 46

Appellants maintain the trial court erred in refusing their request to omit the last sentence of finding of fact number 46. Appellants asked that the following be omitted: "The Landlord's foregoing conduct was in bad faith." Appellants contend

---

[3] There is no error when the requested additional findings were disposed of directly or indirectly by the original findings, and the failure to make additional findings was not prejudicial to the appellant. *Vickery*, 5 S.W.3d at 256–57 n.10 (citation omitted). The failure to make additional findings is not prejudicial to the appellant if the refusal does not prevent an adequate presentation on appeal. *Id.*

that the same is not a proper finding of fact, but, rather a legal conclusion, premised on the trial court's finding that appellants' action or inactions constituted bad faith under Chapter 93 of the Texas Property Code.

A trial court should not make findings on every controverted fact; the court should make additional findings of fact only if they have some legal significance to an ultimate issue in the case. *Vickery*, 5 S.W.3d at 255–56. As set forth in CPB's response, the trial court's finding of fact 46 is a proper finding because "bad faith" under section 93.011 of the Texas Property Code is the same as a factual finding of "a commercial landlord . . . retains the security deposit in dishonest disregard of the tenant's rights or with the intent to deprive the tenant of a lawfully due refund." *See FP Stores v. Tramontina US, Inc.*, 513 S.W.3d 684, 692–93 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Additionally, the preceding sentences in finding of fact number 46 further support the factual conclusion of bad faith.[4] Further, the finding supports the trial court's conclusion of law number 4 that "The Landlord has failed to overcome the statutory presumption that the Landlord acted in bad faith."

Appellants' brief does not address the significance of this requested modification or provide any legal authority supporting the request. Moreover, in their harm analysis, appellants fail to address finding of fact 46. They neither raise this point nor state how they were prejudiced by the trial court's failure to modify finding of fact 46; thus, the point of error is waived. *See Canton–Carter v. Baylor*

---

[4] Finding of fact 46 provides:

The Landlord did not attempt to account to CPB for the security deposit until April 12, 2013, when the Landlord sent an email stating that CPB owed the Landlord $27,712.89 after the Landlord applied CPB's security deposit against the Landlord's claimed expenses. The Landlord did not provide a written description and itemized list of damages and offsets until June 24, 2013. (P Exhibit 10). The Landlord's foregoing conduct was in bad faith.

7

*Coll. of Med.*, 271 S.W.3d 928, 930 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("In the review of a civil case, an appellate court has no discretion to consider an issue not raised in the appellant's brief.").

### b.    Conclusion of law 1

Next, appellants assert the trial court erred in denying their request to amend conclusion of law 1.  Appellants requested "the Court to identify which of the Court's factual findings gave rise to the legal conclusion that 'Frank Zhang and Daxwell' were 'Landlord' as stated in Conclusion of Law 1.  Appellants contend that based on the findings "it is unclear what findings related to the lease agreement gave rise to the Court's Conclusion that both Defendants were Landlord.  Appellants asked the trial court to amend conclusion of law 1 to add at the end the following:  "Because the Lease provided that lease payments were to be made to Daxwell Group, L.P. and that notice to the Landlord was to be made to Daxwell Group, L.P. both Zhang and Daxwell Group, L.P., were Landlord."

Appellants' proposed amendment reiterates trial court findings of fact 6, 10, and 20.[5]  Additionally, appellants' proposed modification ignores findings of fact 21 and 24,[6] which support conclusion of law 1.  "The trial court is not required to

---

[5] Finding of fact 6 provided "On January 3, 2007, CPB and "Frank Zhang or Assigns" (:Landlord"), entered into a Commercial lease. . . ."

Finding of fact 10 provides "lease payment were to be made to 'Daxwell Group, L.P.,' at the address specified. . . ."

Finding of fact 20 provided "notice to the Landlord was to be made to 'Daxwell  Group, L.P.' . . .."

[6] Finding of fact 21 provided " 'This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.' "

Finding of fact 24 provided "The signatures on the Commercial Lease show that it was signed by the Landlord as 'Frank Zhang by Daxwell Group.' " "There was no written assignment of the Commercial Lease by 'Frank Zhang.' " The Commercial Lease Guaranty identified 'Daxwell Group, L.P.,' as a Landlord."

8

set out in detail every reason or theory by which it arrived at its final conclusions. Nor is the trial court required to accept amended findings and conclusions that merely resolve evidentiary issues or are otherwise unnecessary." *See Nicholas v. Envtl. Sys. (Int'l) Ltd.*, 499 S.W.3d 888, 894–95 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The trial court did not err in refusing to modify conclusion of law 1.

### c. Conclusion of law 4

Last, appellants assert the trial court erred in failing to make additional findings of fact to support the court's conclusion of law 4, which provides "Landlord's failure 'to overcome the statutory presumption that the Landlord acted in bad faith." Appellants argue that the court's findings of fact do not include any mitigating evidence that appellants offered that would show that appellants failed to overcome the bad faith presumption. Specifically, appellants asked the court to enter eight bulleted points.

Appellants' brief does not provide any references to the record demonstrating that appellants requested findings of fact were supported by the record. It is not our duty to review the record, research the law, and then fashion a legal argument for an appellant when he has failed to do so. *Canton–Carter*, 271 S.W.3d at 931–32. Briefing waiver occurs when a party fails to make proper citations to authority or to the record or provide any substantive legal analysis. Tex. R. App. P. 38.1(i) (argument must contain appropriate citations to the record). Even though we are required to interpret appellate briefs reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of their argument. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). And it is not our duty to perform an independent review of the

summary-judgment record for evidence supporting an appellants' position. *Priddy v. Rawson*, 282 S.W.3d 588, 595 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). With these principles in mind, we cannot rule on this request, and this portion of appellants' appeal has been waived.

Appellants' first issue is overruled.

## B. Sufficiency of the evidence

### 1. Standard of review

In a nonjury trial, findings of fact have the same force and dignity as a jury's verdict. *Green v. Alford*, 274 S.W.3d 5, 23 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). When a complete reporter's record is filed, as here, we may review the trial court's findings of fact for legal and factual sufficiency under the same standards we apply to jury verdicts. *See id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam)).

In conducting a sufficiency review, we consider the evidence in the light most favorable to the challenged findings and indulge every reasonable inference that supports them. *George Joseph Assetts, LLC v. Chenevert*, 557 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* We credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* When appellants attack a finding on an issue on which they did not have the burden of proof, appellants must demonstrate that no evidence supports the adverse finding. *Id.* Evidence is legally insufficient to support a finding when (1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or

10

(4) the evidence conclusively establishes the opposite of a vital fact. *Id.*

In reviewing the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor and contrary to the challenged findings. *Chenevert*, 557 S.W.3d at 765. We may set aside the verdict for factually insufficient evidence only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The party asserting that the evidence is factually insufficient must establish that the finding is against the great weight and preponderance of the evidence. *Id.* In assessing the evidence, we do not act as factfinder in that we may not pass on the credibility of the witnesses or substitute our judgment for that of the factfinder. *Id.* Instead, the trial court, as the trier of fact in this case, is the "sole judge of the credibility of the witnesses and the weight to afford their testimony." *Id.*

### 2. Zhang and Daxwell are the landlord on the lease.

In their second issue, appellants contend that the trial court's finding that Zhang is liable for damages should be reversed, arguing that the "overwhelming weight of the evidence supports a finding that Daxwell, not Zhang, was the owner and landlord of the property." Appellants assert that "the lease is not ambiguous as the parties thereto," showing Daxwell was the owner and landlord of the leased Premises.

"At the outset, we note that conflicting interpretations of a contract and unclear and uncertain language do not necessarily mean a contract is ambiguous." *See Mobil Exploration & Producing U.S., Inc. v. Dover Energy Exploration*, *L.L.C.*, 56 S.W.3d 772, 776-77 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998)). A contract is not ambiguous if it can be given a certain and definite meaning or interpretation. *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.

11

1983)). We must interpret an unambiguous contract as a matter of law. *Id.*

The uncontroverted evidence in the record demonstrates the parties executed multiple instruments related to the sale and leaseback of the property. Significantly, under "parties," of the commercial contract--improved property, the buyer is shown as "Frank Zhang or Assigns." Under "parties" of the commercial lease, the landlord is listed as "Frank Zhang or Assigns." However, the Lease further shows that Zhang individually:

- initialed pages 1 through 13, and had also initialed the deletion and changes on pages 12 and 13 of the Lease;
- signed the Lease on page 14 as Landlord;
- initialed Exhibit "A" of the Lease;
- initialed page 1 and signed page 2 as Landlord of the Commercial Lease Expense Reimbursement Addendum and initialed the insertion under "Special Provisions";
- initialed page 1 and signed page 2 as Landlord of the Commercial Lease Addendum for Extension Option;
- initialed page 1 and signed page 2 as Landlord of the Commercial Lease Parking Addendum;
- initialed the Rules and Regulations' page to the Lease;
- signed the Commercial Lease Guaranty as a Guarantor of the Lease;
- initialed the Addendum 2 page and the changes made to Addendum 2 of the Lease; and
- initialed the Addendum 4 page of the Lease.

Moreover, paragraph 36.A on page 14 of the Lease contains a merger/integration clause and further provides that the Lease "may not be changed except by written agreement."

The closing documents also demonstrate multiple instances of Zhang having signed on behalf of Daxwell. Also, the warranty with vendor's lien shows Daxwell

12

as the grantee. Notwithstanding, with respect to the lease, there was no evidence at trial of a written assignment of the Lease. Appellants acknowledged in a brief to the trial court "[f]or unknown reasons, the Lease was filled out prior to the assignment of the contract and the closing and stated that the landlord was "Frank Zhang or assigns." In his deposition, Zhang was asked, "What was your plan for the property at closing: Were you going to put it into your name? He responded, "No, Daxwell Group, LLC." He then went on to testify that he did not closely read everything at closing to ensure the information was correct.

An assignment of a lease is an assignment of an interest in real property, and since the Lease is for a term longer than one year, such an assignment is required to be in writing under the Texas Statute of Frauds. *See* Tex. Bus. & Com. Code § 26.01(b)(4), (5), and (6); *Swinehart v. Stubbeman*, 48 S.W.3d 865, 875 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (assignment of oil and gas lease governed by the statute of frauds). Accordingly, the Lease unambiguously shows that Frank Zhang is named as the landlord. There is no assignment of the Lease in the record to Daxwell. The trial court's determination that Zhang and Daxwell are landlord is supported by the evidence of record.

Appellants' second issue is overruled.

### 3. Failure to return security deposit.

#### a. Texas Property Code requirements

The Property Code grants a commercial tenant the right to sue a landlord for retaining a security deposit in bad faith. Section 93.011 provides:

> (a) A landlord who in bad faith retains a security deposit in violation of this chapter is liable for an amount equal to the sum of $100, three times the portion of the deposit wrongfully withheld, and the tenant's

13

reasonable attorney's fees incurred in a suit to recover the deposit after the period prescribed for returning the deposit expires.

(b) A landlord who in bad faith does not provide a written description and itemized list of damages and charges in violation of this chapter:

> (1) forfeits the right to withhold any portion of the security deposit or to bring suit against the tenant for damages to the premises; and

> (2) is liable for the tenant's reasonable attorney's fees in a suit to recover the deposit.

(c) In a suit brought by a tenant under this chapter, the landlord has the burden of proving that the retention of any portion of the security deposit was reasonable.

(d) A landlord who fails to return a security deposit or to provide a written description and itemized list of deductions on or before the 60th day after the date the tenant surrenders possession is presumed to have acted in bad faith.

Tex. Prop. Code § 93.011. Chapter 93 establishes two distinct causes of action for a tenant seeking the return of his security deposit. *See* Tex. Prop. Code § 93.011. The first cause of action involves the landlord's bad faith retention of the security deposit. *Id*. § 93.011(a). The second cause of action involves the landlord's bad faith failure to account for the security deposit. *Id*. § 93.011(b). Moreover, the landlord has the burden to prove the retention of any portion of the security deposit was reasonable. *Id*. § 93.011(c).

Thus, statutory damages under section 93.011 are "predicated on a determination that the landlord retained the deposit 'in bad faith.' " *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 106–07 (Tex. App.—Houston [1st Dist.] 2013, no pet.). If the tenant shows that the landlord failed either to return the tenant's security deposit or to provide the tenant a written description and itemized list of deductions within sixty days of the tenant surrendering possession of the leased premises, then it is presumed that the landlord acted in bad faith, and the burden

shifts to the landlord to rebut the presumption. Tex. Prop. Code § 93.011(d); *Eun Bok Lee*, 411 S.W.3d at 107. If the landlord fails to offer rebutting evidence, its bad faith is established as a matter of law.

"There is a dearth of case law construing and applying section 93.011.(d)." *FP Stores, Inc. v. Tramontina US, Inc.*, 513 S.W.3d 684, 691 (Tex. App.—Houston [1st Dist.] 2016, no pet.) "For guidance we look to the more developed body of case law construing and applying Property Code section 92.109—a parallel statute that applies to *residential* tenancies." *Id*. (*emphasis added*). Section 92.109 provides: (a) A landlord who in bad faith retains a security deposit in violation of this subchapter is liable for an amount equal to the sum of $100, three times the portion of the deposit wrongfully withheld, and the tenant's reasonable attorney's fees in a suit to recover the deposit.

> (a) A landlord who in bad faith retains a security deposit in violation of this subchapter is liable for an amount equal to the sum of $100, three times the portion of the deposit wrongfully withheld, and the tenant's reasonable attorney's fees in a suit to recover the deposit.
>
> (b) A landlord who in bad faith does not provide a written description and itemized list of damages and charges in violation of this subchapter:
>
> > (1) forfeits the right to withhold any portion of the security deposit or to bring suit against the tenant for damages to the premises; and
> >
> > (2) is liable for the tenant's reasonable attorney's fees in a suit to recover the deposit.
>
> (c) In an action brought by a tenant under this subchapter, the landlord has the burden of proving that the retention of any portion of the security deposit was reasonable.
>
> (d) A landlord who fails either to return a security deposit or to provide a written description and itemization of deductions on or before the 30th day after the date the tenant surrenders possession is presumed to have acted in bad faith.

15

Tex. Prop. Code § 92.109.

Case law analyzing section 92.109 addresses both what constitutes "bad faith" and how a residential landlord may rebut the presumption that it acted in bad faith. These cases hold that a residential landlord acts in bad faith if it either "acts in dishonest disregard of the tenant's rights or intends to deprive the tenant of a lawfully due refund." *Johnson v. Waters at Elm Creek, L.L.C.*, 416 S.W.3d 42, 47 (Tex. App.—San Antonio 2013, pet. denied). These cases further hold that, to rebut the presumption of bad faith, the landlord must prove its good faith—that is, the landlord must prove "'honesty in fact in the conduct or transaction concerned.'" *Hardy v. 11702 Mem'l, Ltd.*, 176 S.W.3d 266, 271 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (quoting *Wilson v. O'Connor,* 555 S.W.2d 776, 780 (Tex. App.—Dallas 1977, writ dism'd)).

For example, in *Pulley v. Milberger*, the Dallas Court of Appeals affirmed a trial court's judgment in favor of a residential landlord, in part because the evidence showed that the landlord was an amateur lessor who believed he could retain the security deposit due to the damage to the property. *See* 198 S.W.3d 418, 430–31 (Tex. App.—Dallas 2006, pet. denied). In its opinion, the court discussed the evidence necessary to rebut the presumption of bad faith, stating:

> Evidence that a landlord had reason to believe he was entitled to retain a security deposit to recover reasonable damages is sufficient to rebut the presumption of bad faith created by the Texas Property Code. Other evidence may include: (1) the landlord is an amateur lessor because the residence is his only rental property; (2) the landlord had no knowledge of the requirement to submit an itemized list of all deductions from the security deposit; (3) extensive damage was done to the residence; (4) the landlord attempted to do some of the repairs himself to save money; or (5) the landlord had a reasonable excuse for the delay, e.g., he was on vacation.

*Id*. at 428–29 (citations omitted).

The section 92.109 case law is instructive here. Under Property Code section 93.011, a commercial landlord retains a tenant's security deposit in bad faith if it retains the security deposit in dishonest disregard of the tenant's rights or with the intent to deprive the tenant of a lawfully due refund. *See FP Stores, Inc.* 513 S.W.3d at 693. "If the tenant shows that the landlord failed to timely provide a refund of the security deposit or an accounting, then it is presumed that the landlord acted in bad faith." *Id*. (citing Tex. Prop. Code § 93.011(d)).

"To rebut the presumption to defeat a tenant's motion for summary judgment, the landlord must present more than a scintilla of evidence that it acted in good faith." *FP Stores, Inc*., 513 S.W.3d at 693 (citations omitted). "That is, the landlord must present more than a scintilla of evidence of 'honesty in fact in the conduct or transaction involved'—that it acted with an honest regard for the tenant's rights and with the intent to provide the tenant with a refund and an accounting." *Id*.

> **b.** **Zhang and Daxwell failed to overcome the bad-faith presumption for withholding CPB's security deposit.**

The trial court made the following findings of fact related to the withholding of CPB's security deposit.

44. CPB made request to the Landlord for refund of its security deposit by emails dated March 28 and May 28, 2012, and by a letter dated February 5, 2013, and sent by US Postal Service, Certified Mail Return Receipt Requested. Each of the emails and the letter displayed CPB's new address, and the letter specifically requested that the Landlord "send the refund to the forwarding address below within 10 business days." (P Exhibit 9).

45. CPB had previously provided the Landlord with CPB's new address for billing purposes. Through March 2012, the Landlord mailed invoices to CPB at its new address for goods

that CPB ordered and received from the Landlord. (2 RR 13-17).

46. The Landlord did not attempt to account to CPB for the security deposit until April 12, 2013, when the Landlord sent an email stating that CPB owed the Landlord $27,712.89 after the Landlord applied CPB's security deposit against the Landlord's claimed expenses. The Landlord did not provide a written description and itemized list of damages and offsets until June 24, 2013. (P Exhibit 10). The Landlord's foregoing conduct was in bad faith.

47. The Landlord did not make any claim for or charge CPB for holdover rent until June 24, 2013, (P Exhibit 10) being over 2 months after this lawsuit was filed and being the same day the Landlord was served with citation from the Secretary of State.

The trial court made the following findings of fact related to the withholding of CPB's security deposit.

3. The Landlord breached Paragraph 5.C of the Commercial Lease and failed to comply with Texas Property Code §93.005(a) by failing to return CPB's security deposit not later than the 60th day after the date CPB surrendered the leased premises and provided notice to the Landlord of CPB's forwarding address.

4. The Landlord has failed to overcome the statutory presumption that the Landlord acted in bad faith. Tex. Prop. Code §93.011(d).

5. The Landlord has failed to carry the Landlord's burden of proving that the retention of any portion of the security deposit was reasonable. Tex. Prop. Code §93.011(c).

6. The Landlord is liable to CPB for an amount equal to the sum of $100 plus three times $34,560, being the portion of the security deposit wrongfully withheld, being a total of $103,780. Tex. Prop. Code §93.011(a).

7. The Landlord has forfeited its right to withhold any portion of the security deposit or to bring suit against CPB for damages to the premises. Tex. Prop. Code §93.011(b).

8. The Landlord failed to provide any evidence that the CAM

18

expense the Landlord seeks to recover against CPB were "reasonably incurred to maintain, repair, operate, manage, and secure the Property" as required by Paragraph A. (2) of the Commercial Lease Expense Reimbursement Addendum.

9. The Landlord failed to provide any evidence that the specific amounts the Landlord charged CPB for 2011 CAM expenses for insurance; landscaping; management fee; pest control; building and property repairs and maintenance; sprinkler system monitoring, inspection and repairs; and the HFD Project were in accordance with an agreement with CPB for the specific amount charged, or were the usual, customary and reasonable prices for those goods and/or services. *Andy's Mart #352 v. Reliant Energy Retail Services*, 2009 Tex. LEXIS 8559 at *9 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

10. The Landlord also failed to authenticate its 2011 CAM, (D Exhibit 26)15; 2012 CAM, (D Exhibit 27)16; and other leasehold expense documents (D Exhibit 29)17 as business records, the same having been admitted for the limited purposes of evidencing that the documents were sent.

As the trier of fact, it is within the trial court's responsibility to assess the witness's credibility and determine the weight to be given to the testimony. *Johnson*, 416 S.W.3d at 49. "We may not substitute our judgment for that of the trier of fact or pass on the credibility of the witnesses." *Sunl Group, Inc. v. Zhejiang Yongkang Top Imp. & Exp. Co., Ltd.*, 394 S.W.3d 812, 817 (Tex. App.— Dallas 2013, no pet.).

The trial court's determinations are supported by the evidence of record. Appellants had the burden at trial to prove that their retention of the security deposit was reasonable, and that their failure to timely provide an accounting was excused. *See Johnson v. Waters at Elm Creek LLC*, 416 S.W.3d 42, 47–48 (Tex. App.—San Antonio 2013, pet. denied). If the landlord failed to provide an accounting of the damages and charges in violation of the statute and is unable to rebut the presumption of bad faith, the landlord "forfeits the right to withhold any

portion of the security deposit or to bring suit against a tenant for damages to the premises." Tex. Prop Code § 93.011(b)(1).  Here, appellants failed to carry their burden of proof at trial to overcome the presumption of bad faith, and therefore forfeited their right to withhold any portion of the security deposit or sue for any damages.[7] *See Eun Bok Lee*, 411 S.W.3d at 107.

Appellants' third issue is overruled.

### III.   Conclusion

The trial court's judgment is affirmed.

/s/      Margaret "Meg" Poissant
            Justice

Panel consists of Chief Justice Frost and Justices Bourliot and Poissant.  (Frost, C.J., dissenting).

---

[7] Even if appellants had been able to defeat the presumption of bad faith with regard to the retention of CPB's security deposit, appellants then would have been required to prove that their retention of the security deposit was reasonable.  *See Pulley*, 198 S.W.3d at 429.